**STATE of Missouri, Plaintiff–Respondent,**

v.

**Beverly JAYNES, Defendant–Appellant.**

No. 69869.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 22, 1997.

Dave Hemingway, Asst. Sp. Public Defender, St. Louis, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Becky Owenson Kilpatrick, Asst. Attorney

General, Jefferson City, for plaintiff-respondent.

HOFF, Judge.

Beverly Jaynes (Defendant) appeals the judgment entered on her convictions by a jury of first degree murder, section 565.020 RSMo Cum.Supp.1990, and armed criminal action, section 571.015 RSMo 1986. Defendant was sentenced by the trial court to two concurrent life sentences in the department of corrections. We reverse and remand for new trial.

The evidence is not in dispute. Viewed in the light most favorable to the verdict, Defendant shot and killed her husband, Christian Jaynes (Mr. Jaynes/decedent), in the parking garage at Lambert Airport on August 23, 1991. Defendant's defense at trial was that she was not guilty by reason of insanity.

We reverse based on Defendant's second point. In this point, Defendant asserts the trial court erred in allowing the decedent's brother-in-law, Mr. Allan James Snyder, to testify regarding a letter purportedly written to Defendant by Ms. Shirley Dudly of Ohio State Life Insurance Company. Mr. Snyder had been given the letter by Defendant's children who received it at Defendant's home after she had been arrested. Mr. Snyder testified that the subject matter listed on the letter stated "your letter of August 11, 1991." Defendant contends Mr. Snyder's testimony was inadmissible hearsay because it was used to prove that Defendant had written Ms. Dudly on August 11, 1991, eleven days before the shooting, to inquire about the status of Mr. Jaynes' life insurance policies.

Defendant argues the admission of such hearsay evidence was violative of her Sixth and Fourteenth Amendment rights to due process, which include the right to confrontation and the right to a fair trial. Defendant asserts the letter did not fit any hearsay exception, including the business records exception, since no custodian or other qualified person testified to the source of its details or whether it was collected in the regular course of business. Because there was no proof the "facts" the letter displayed were observed by Ms. Dudly or rested on data from anyone with a duty to collect it, Defendant argues the letter was hearsay. Defendant contends this harmful error may have led the jury to find she deliberated about killing Mr. Jaynes eleven days before the shooting. We agree.

■ Hearsay evidence is any in-court testimony of an out-of-court statement offered to prove the truth of the matter asserted within the out-of-court statement. *State v. Jones,* 863 S.W.2d 353, 357 (Mo.App.W.D. 1993). The essential principle of the Hearsay rule is to secure the trustworthiness of testimonial assertions by affording the opportunity to test the credibility of the witness under cross-examination. *State v. Kirkland,* 471 S.W.2d 191, 193 (Mo.1971). The right to cross-examination is essential and indispensable. *Id.*

> The theory of the Hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of Cross-examination. It is here sufficient to note that the Hearsay rule, as accepted in our law, signifies a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of Cross-examination.

*Id.*

Although the letter was not included in the legal file, Mr. Snyder read the letter into evidence as follows:

> [MR. SNYDER:] It is addressed to Beverly Jaynes, 142 South Maple, St. Louis, Missouri, 63119. It has the policy No. T0912872. And, the subject is—your letter of August 11, 1991. Our records indicate that Christian Jaynes is the owner of the above policy, so we are unable to provide any information to you regarding this policy. We will not require your signature to surrender the policy. Any surrender proceeds would be made payable to the owner, since according to our Compliance Department, Missouri is not a community property state. It's signed Shirley Dudly, Disbursement.

The State asserts the letter was not offered to prove Defendant was an owner of

the policy referenced, that her signature was not required for surrender of the policy, or that Missouri is not a community property state. Because the State contends the letter was not offered to prove the truth of the matters discussed within the body of the letter, the State argues it was not hearsay.

■ However, we find the letter was hearsay. We find the letter was offered to prove the subject matter of the letter listed under Defendant's address—"your letter of August 11, 1991." We find the letter was offered to prove that Defendant had written Ohio State Life Insurance Company regarding Mr. Jaynes' life insurance policies on August 11, 1991, eleven days before the shooting. Because neither Ms. Dudly, nor anyone else representing Ohio State Life Insurance Company were called to testify, Defendant was not afforded the right to cross-examination. Therefore, Defendant was not able to challenge the trustworthiness of Ms. Dudly's assertions contained within the letter based purely on .the testimony of Mr. Snyder. Accordingly, allowing Mr. Snyder to testify regarding this letter was improper because the letter was hearsay.

■ At trial, there was argument that although the letter was hearsay, it was a business record and therefore, admissible under the Uniform Business Records as Evidence Law. Under this hearsay exception,

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Section 490.680 RSMo 1986.

Essentially, the [Business Records as Evidence Law] sets out three requirements that must be met as a predicate to admissibility of a document as a business record: (1) the custodian of records must testify to the record's identity and mode of preparation; (2) the custodian must testify that

the record was made in the regular course of business, at or near the time of the act, condition or event; and (3) the court must find that admission is justified by the sources of information, and the method and time of preparation.

*State v. Sutherland,* 939 S.W.2d 373, 377 (Mo. banc 1997).

■ We find the letter was not admissible under this hearsay exception. In this case, neither Ms. Dudly nor anyone from Ohio State Life Insurance Company testified. Mr. Snyder could not qualify the letter as a business record. Therefore, the letter does not fall under the business records exception to the Hearsay rule. We find Mr. Snyder's testimony regarding Ms. Dudly's letter constituted prejudicial error. Accordingly, we reverse and remand for new trial.

Because Defendant's first and third points may arise on retrial, we address each of them as follows.

In her first point, Defendant asserts the trial court erred in ruling she was fit to proceed after finding that she was actively psychotic. Defendant contends that her psychosis affected her perceptions and memories of the events on trial, just as perceptual impairments rendered the accused unfit in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Defendant argues the delusions caused by her mental illness also impaired her judgments so that she lacked the capacity to confer with counsel with a rational degree of understanding. Defendant asserts this is illustrated by her belief that going to trial was equivalent to acquittal and the fact that she would not even consider a guilty plea for peace disturbance even if the trial court only sentenced her to time served. Defendant contends the drug Mellaril did not stop her delusions, it merely calmed her reactions without altering her inability to think normally. Due to the trial court's error, Defendant asserts her Fourteenth Amendment right to due process was violated. We disagree.

■ "While we recognize the due process considerations, the trial judge's determination of competency is one of fact and must stand unless there is no substantial evidence

to support it." *State v. Petty,* 856 S.W.2d 351, 353 (Mo.App. S.D.1993). The standard to determine competency of a defendant to stand trial, which has been laid out in *Dusky,* section 552.020.1 RSMo 1986, and subsequent Missouri case law, states:

> No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.

Section 552.020.01 RSMo 1986.

In *Dusky v. United States,* 271 F.2d 385 (8th Cir.1959), Dusky was seen by two different doctors over a five month period. *Id.* at 387–389. Three reports over that time period were issued which stated, when summarized, that Dusky was psychotic and suffered from schizophrenia. *Id.* at 388. Although Dusky had improved while under medication, his condition was such that he was "unable to understand the nature of the proceedings with reference to the charges against him and is unable to properly assist counsel in his defense." *Id.* The last report concluded that Dusky was "unable to properly understand the proceedings against him and unable to adequately assist counsel in his defense." *Id.* at 389.

At trial, one of the doctors testified that Dusky was oriented to time, place, and person, knew what he was charged with, knew that if there was a trial it would be before a judge and jury, knew that if found guilty he could be punished, knew who his attorney was and that it was his duty to protect Dusky's rights, and could furnish with substantial accuracy some past history and some events leading up to the crime. *Id.* However, the doctor also testified that Dusky would be unable to properly assist his attorney in his defense. The doctor opined Dusky could not properly interpret the meaning of things that had happened and could not convey full knowledge of his actual circumstances due to an inability to interpret reality from unreality, suspicions from reality and get past his confused thinking. *Id.* The judge found Dusky had the mental competency to stand trial. *Id.*

When the case came before the United States Supreme Court in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the court found the record did not sufficiently support the finding that Dusky was competent. *Id.* at 402, 80 S.Ct. at 788–89. Additionally, the court found the district judge would need more information than the record presented, because "it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,'" because the "'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.* at 402, 80 S.Ct. at 789. The Supreme Court reversed and remanded for a new competency hearing. *Id.* at 403, 80 S.Ct. at 789.

In the case at bar, the trial court's order finding Defendant competent to stand trial states:

\* \* \* \* \* \*

> Defendant suffers from a mental disease, namely delusional disorder (paranoid/persecutory). She is actively psychotic, and is medicated with an anti-psychotic drug, Mellaril. However, she does not lack the capacity to understand the proceedings against her and is currently capable of assisting in her own defense.

> Therefore, the Court finds that Defendant is competent to proceed.

\* \* \* \* \* \*

At Defendant's competency hearing, Dr. John Raben, the supervisor psychiatrist for the pretrial evaluation unit at St. Louis State Hospital, testified for the State. Dr. Raben testified that he interviewed Defendant in July, 1994. Dr. Raben stated that Defendant had "an excellent understanding" of courtroom procedures. The doctor also testified that he had reviewed Defendant's medical records and found that Defendant had three other diagnoses of mental disease. He agreed that Defendant suffers from a delusional disorder of the persecutorial type, which was not curable but treatable and controllable through anti-psychotic medication.

He further testified that Defendant had an excellent understanding of the charges against her, as well as her plea bargain options, the range of punishment, and the fact that she would not have to testify.

Dr. Raben testified that he had an opportunity to speak with Defendant a few minutes before the hearing at which time she indicated that she no longer felt her attorney was conspiring to poison her and that although she did not fully trust her attorney, she believed her attorney was trying to help her. Dr. Raben concluded that although Defendant still suffered from persecutorial delusions, she was competent to proceed to trial.

■ Dr. Raben's testimony supported the trial court's finding that although Defendant suffered from an active psychosis, it did not affect her ability to understand the proceedings against her or affect her ability to assist in her own defense, based on her progress under the drug, Mellaril. The trial court satisfied the factors under section 552.020.1 RSMo 1986. Although there was conflicting evidence regarding Defendant's competency, it is within the trial court's province to resolve the conflict. *Petty*, 856 S.W.2d at 354. Because there was substantial evidence in the record to support the trial court's ruling regarding Defendant's competency, we find no error. Point denied.

In her third point, Defendant contends the trial court erred in allowing the State to read twelve transcript pages of dialogue between Defendant and Dr. Raben in response to a question regarding one isolated remark made by Defendant. Defendant asserts the trial court's decision to allow twelve pages of transcript to be read was contrary to sections 552.020.12 RSMo 1986 and 552.030.5 RSMo 1986. Defendant argues that merely because her statements were part of data Dr. Raben reviewed, it did not justify reading her entire statement. Defendant argues the true purpose in reading the transcript was to create a false impression of her lucidity. Defendant asserts this dialogue occurred after she had been on anti-psychotic medication for more than one year which she was not taking when the offense occurred. Defendant contends the undue emphasis placed on the lucid sounding remarks effectively negated the tri-

al court's admonition not to use them as proof she committed murder, particularly since the prosecutor argued that her versions of struggling with Mr. Jaynes for the gun clashed and were contradictory. In summary, Defendant argues her Fourteenth Amendment due process right to the statutory exclusion of statements and Sixth Amendment right to a fair trial based on reliable, non-misleading evidence were violated. We disagree.

Section 552.020.12 RSMo 1986 precludes the use of statements made by an accused during a competency examination on the issue of guilt. *State v. Barnes*, 740 S.W.2d 340, 343 (Mo.App. E.D.1987). Section 552.030.5 RSMo 1986 similarly bans the use of such statements on the issue of whether the accused committed the act charged against him or her. *Id.* However, section 552.030 RSMo 1986 provides for the admission of statements on the issue of the defendant's mental condition. *Id.*

■ Contrary to Defendant's assertion, the record shows that Defendant's statements to Dr. Raben were admitted to allow the State to question the doctor regarding his opinion concerning Defendant's view on her responsibility. The State only asked Dr. Raben about the conversation after he had expressed his opinion that Defendant was unable to conform her conduct to the law and that she did not know the wrongfulness of what she was doing.

■ At the close of all evidence, the trial court issued "Instruction No. 5" based on MAI–CR3d 306.04. It stated that the doctors' testimony regarding statements made to them by Defendant during inquiry into her mental condition were not to be considered, under any circumstances, as evidence that Defendant did or did not commit the acts charged against her. Because of this instruction and because the testimony was used to provide a basis for the doctor's opinion, we find no error and no prejudice. Point denied.

Defendant's fourth, fifth and sixth points allege trial court plain error violations. Because these points are unlikely to recur on remand, we will not address them.

Judgment reversed and remanded for new trial in accordance with this opinion.

CRAHAN, P.J., and GRIMM, J., concur.