**Lloyd HUBBARD, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 57484.**

Missouri Court of Appeals,
Western District.

Aug. 1, 2000.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 2000.

Application for Transfer Denied
Dec. 5, 2000.

**28**

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Susan K. Glass, Asst. Attys. Gen., Jefferson City, for Respondent.

Before: BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Lloyd Hubbard appeals from the motion court's order denying his Rule 24.035 [1] motion for post-conviction relief after an evidentiary hearing. The appellant pled guilty, pursuant to a plea agreement, in the Circuit Court of Clay County, before the Honorable Michael J. Maloney, to assault of a law enforcement officer in the first degree, § 565.081,[2] and armed criminal action, § 571.015. As a result of his convictions, he was sentenced, as a persistent offender, § 558.016, to consecutive terms of imprisonment of twenty years, to be served consecutive to a prison sentence he was serving on an unrelated charge.

The appellant raises two points on appeal. In Point I, he claims that the motion court erred in denying his Rule 24.035 motion because its finding that he was competent to plead guilty, and thus, his pleas were voluntary, was clearly erroneous in that: (1) "the court's competency determination was based on incorrect and unreliable testimony provided by the state's expert"; and (2) "the court placed undue emphasis on Hubbard's demeanor at the plea and sentencing proceedings." In Point II, he claims that the motion court erred in denying his Rule 24.035 motion because he received ineffective assistance of counsel in that his plea counsel failed to adequately investigate and determine his competency to plead guilty and allowed him to plead guilty, although he doubted his competency to do so.

We affirm.

### Facts

### Pleas of Guilty

On April 24, 1996, an indictment was returned by a Clay County grand jury charging the appellant with three counts of assault of a law enforcement officer in the first degree, § 565.081, and three counts of armed criminal action, § 571.015. On July 18, 1996, the appellant's defense counsel, Bert Godding, filed a motion for a psychiatric examination of the appellant, pursuant to §§ 552.020 and 552.030, which was granted on July 31, 1996.

On September 13, 1996, Dr. Deja Suthikant of the Missouri Department of Mental Health met with the appellant for approximately one hour and forty minutes at the St. Joseph State Hospital for purposes of evaluating him. In his report to the court following the examination, he diagnosed the appellant with antisocial personality disorder, depressive disorder not otherwise specified, and polysubstance abuse, but concluded that "none of these mental disorders fall within the meaning of mental illness as described in Chapter 552 and Chapter 630, RSMo." He also found that the appellant had a seizure disorder and was malingering. He concluded that the appellant had the capacity to understand the proceedings against him and assist in his own defense. On September 18, 1996,

---

**1.** All rule references are to the Missouri Rules of Criminal Procedure (1997), unless otherwise indicated.

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

the appellant's counsel submitted to Dr. Suthikant a completed questionnaire provided by him, as well as release forms for the appellant's medical records at St. Joseph State Hospital, Truman Medical Center, Children's Mercy Hospital, and Fulton Diagnostic Center. Dr. Suthikant's report of the appellant's psychiatric examination was filed with the court on September 25, 1996.

On October 11, 1996, the appellant's counsel filed an "Objection to Findings Made Pursuant to Mental Examination and Motion for Re–Examination" alleging that Dr. Suthikant's "mental examination was completed without any records from the hospitalizations defendant had at Truman Medical Center, Children's Mercy Hospital, Fulton Diagnostic Center, and St. Joseph State Hospital." He requested that a second psychiatric examination be performed by the "Department of Mental Health ... and/or a private psychiatrist." On October 24, 1996, the trial court entered an "Order for Completion of Mental Examination," ordering that "the Department of Mental Health's designee or Dr. Suthikant review and examine defendant's hospitalization records and file a completed report as to the findings."

On or about January 3, 1997, Dr. Suthikant sent a letter to the court indicating that he had reviewed the appellant's records from Children's Mercy Hospital and St. Joseph State Hospital. He reported that, based on these records, "there were no indications that [the appellant] had exhibited any psychotic symptoms at the two institutions.... As a matter of fact, the records from Youth Center of St. Joseph State Hospital confirmed our primary diagnosis that he had Antisocial Personality Disorder." He concluded again that the appellant "didn't talk like a psychotic person, he did not act like a psychotic person, and he didn't look like a psychotic person. Therefore, the only probable diagnosis is malingering."

On January 15, 1997, the trial court, the Honorable Michael J. Maloney, held a competency hearing. At the hearing, Dr. Suthikant was the only witness called. He testified that the appellant, in his opinion, was not suffering from a mental disease or defect that prevented him from understanding the nature of the proceedings against him. He further testified that after his initial examination of the appellant and report, he reviewed the appellant's records and that his review of the records did not change his diagnosis. He testified that the appellant told him that he was epileptic and taking Haldol, Dilantin, and Phenobarbital, which are medications used to treat epilepsy and psychosis. He also testified that he believed the appellant was malingering and that he did not do any psychological testing on the appellant because "it would be wasting the time and money of the state," in that the appellant would not cooperate. He testified that the appellant was uncooperative in that he did not answer many of the questions and, at times, he would say that he did not know the answer to a question, but if the question were asked again, he would provide some information. The appellant did not present any evidence at the hearing. At the conclusion of the hearing, the trial court found that the appellant did not have "a mental disorder that falls within the meaning of mental illness described in Chapters 552 and 630 of the Revised Statutes of Missouri." The court further found that the appellant had "the capacity to understand the proceedings against him and to assist in his own defense." The appellant's counsel then made an oral motion requesting that a second psychiatric examination of the appellant be done at a time when he was not taking medication, which was denied by the court.

On March 24, 1997, the appellant's trial counsel filed an "Objection to Findings Made Pursuant to Mental Examination and Motion for Re–Examination." In the motion, the appellant's counsel informed the court that sometime after January 15, 1997, the appellant had attempted to commit suicide while in the Clay County jail by

swallowing two AA batteries. He also informed the court that records from the Clay County jail indicated that the appellant "was on anti-hallucinatory medication at the time of the examination by Dr. Suthikant." He further informed the court that the appellant had been transferred from the county jail to the Missouri Department of Corrections on an unrelated charge and that "[t]he Department of Corrections ha[d] since determined that he is in need of psychiatric treatment, and is considering placing the [appellant] in the Farmington facility." He requested that the court "order further evaluation be done ... by the Department of Mental Health, through its representatives and employees, and/or a private psychiatrist ... or, in the alternative, to allow an independent mental examination to be done on the [appellant]." On April 3, 1997, the trial court held a hearing on the appellant's motion, after which the court denied it.

At the docket call of the case on June 12, 1997, the appellant's counsel renewed his March 24, 1997, request for a second mental examination, informing the court that the appellant had been placed in a psychiatric unit at the Farmington Correctional Center (the FCC). The court overruled the motion, after which the appellant's trial counsel informed the court that the appellant wished to enter pleas of guilty pursuant to a plea agreement.

On June 13, 1997, the appellant, pursuant to a plea agreement, pled guilty to one count of assault of a law enforcement officer in the first degree, § 565.081, and one count of armed criminal action, § 571.015. At the plea hearing, the following exchange occurred between the appellant and the court:

Q. I am required to inquire as to your state of mind. Are you presently under the influence of alcohol or drugs?

A. Just medication that the doctors have got me on.

Q. I want to ask you about medication. I believe from what you've just said that you're not under the influence of any alcohol.

A. No, sir, I'm not.

Q. And you're not under the influence of any controlled substance?

A. No, sir.

Q. Okay. This medication that you're taking, what condition does that correct?

A. It keeps me from hallucinating and hearing things.

Q. Okay. When you take the medication, do you take it in the quantity that the doctor has prescribed?

A. Yes, sir.

Q. Do you take the medication at the times the doctor has said for you to take the medication?

A. Yeah.

Q. Does this medication enable you to have a clear mind and think straight and prevent you from having these hallucinations that you've mentioned?

A. No, sir. If I don't take the medicine, I'll see things and hear things, and my mind won't be right.

Q. Have you been taking your medication regularly enough so that you're not affected by that today?

A. Yes, sir.

Q. When you're taking your medication properly, are you able to make decisions that are intelligent decisions?

A. Yes, sir.

Q. In other words, do you know what you're doing when you're taking your medication correctly?

A. Yes, sir.

Q. It's my belief from what we've said so far up to the time we just started talking about this was that you understand my questions as I ask them and you give me a straight answer to everything I ask.

A. Yes, sir.

Q. It seems to me we're communicating quite well. Do you agree with that?

A. Yes, sir.

The court found that the appellant was "offering his plea voluntarily, that he's doing it intelligently ... [and] that he knows what he's doing here today and is doing what he thinks is best for himself." On July 31, 1997, the court sentenced the appellant, as a persistent offender, to two consecutive terms of imprisonment of twenty years in the Missouri Department of Corrections, to be served consecutive to a term of imprisonment he was serving on an unrelated charge.

### Post–Conviction Proceedings

On October 1, 1997, appellant timely filed a *pro se* Rule 24.035 motion to vacate, set aside, or correct judgment and sentence. On May 11, 1998, appointed counsel filed an amended Rule 24.035 motion, alleging, *inter alia*, that the appellant was denied due process of law because he was "not competent at the time of the plea." He also claimed that he received ineffective assistance of plea counsel because his counsel

> failed to adequately investigate [the appellant's] mental health status before the guilty plea. Plea counsel failed to have an independent expert examine [the appellant] to determine if he was competent at the time of the offense and competent to plead guilty. Plea counsel was ineffective for allowing [the appellant] to plead guilty despite the fact that he doubted, or should have doubted, [the appellant's] competency to plead guilty.

On January 9, 1999, an evidentiary hearing on the appellant's motion was held before the Honorable Michael J. Maloney. At the hearing, the appellant's motion counsel introduced into evidence his medical records from the Clay County jail. These records indicated that on May 28, 1996, the appellant reported "periods of loss of consciousness resembling seizure disorder" and said that it had happened two times since his admission. On August 8, 1996, the appellant appeared "withdrawn, suspicious, reports paranoid delusions of control ('things crawling in my head trying to control me')—no hallucinations reported but are suspected." The appellant was prescribed Mellaril, an antipsychotic medication. The records also indicate that on October 17, 1996, the appellant was "disoriented, having auditory and tactile hallucinations 'voices want to get me and take my brain away' 'things (bugs) crawling in my head.' Withdrawn, little contact." A consultation by Dr. Daniel Ward, a consulting psychiatrist for the Clay County jail, was ordered. The records indicate that Dr. Ward examined the appellant on October 19, 1996. Dr. Ward's notes indicate that the appellant was hallucinating and reported that he had bugs crawling on him and in his head and was hearing voices inside his head. According to Dr. Ward's notes, the appellant appeared confused and was slow in his responses to questions and frequently gave no responses. Dr. Ward diagnosed the appellant as having an organic mental disorder or chronic schizophrenia and discontinued his use of Mellaril, prescribing Haldol, another anti-psychotic medication.

The appellant's motion counsel also introduced into evidence at the evidentiary hearing his records from the Missouri Department of Corrections. They indicated that the appellant was transferred from the Clay County jail to the Fulton Reception and Diagnostic Center (the FRDC) on or about February 6, 1997, and that upon his arrival he was "virtually non-responsive" and "placed on suicide watch." The records also indicate that on or about February 11, 1997, he reported that he had a history of "hallucinations where he 'sees and hears violent stuff with black guys,—people burning.' Also hears laughter and voices that want him to go with them." The records further indicate that sometime shortly after his arrival at the FRDC, he was examined by Dr. Z. Ajans, a consulting psychiatrist. The appellant reported active hallucinations to Dr. Ajans. Dr. Ajans found that he had "limited cognitive functioning and appeared to be disoriented to his location, current date and time," and "his insight and judgment were impaired."

He diagnosed him as having an "Organic Mental Disorder with hallucinations and explosive outbursts," increased his dosage of Haldol, and referred him to the Social Rehabilitation Unit in the FCC for closer supervision and treatment.

The appellant's records from the Missouri Department of Corrections indicate that he was admitted to the Social Rehabilitation Unit in the FCC on February 15, 1997, where a clinical caseworker assistant evaluated him. She reported that he was "cooperative during the intake interview, but appeared to have difficulty concentrating by the display of delayed responses." He reported to her that he " 'used to see demons, real evil looking . . . They try to hurt me . . . They get inside of me, then I cry and get violent.' " She noted that he appeared to "legitimately be suffering from a chronic mental health condition."

Dr. Delaney Dean, a licensed psychologist and an attorney, testified at the motion hearing that she examined the appellant on April 30, 1998, at the request of motion counsel at the FCC for three hours and fifteen minutes. She testified that the appellant was easily distracted and intermittently scanned the small examination room because it seemed to him that someone was trying to sneak up on him. He reported to Dr. Dean that he experienced hallucinations, heard voices that told him they were going to hurt him, and felt bugs crawling in his head. She testified that his strategy for dealing with the hallucinations, not sleeping at night when they were worse, was atypical of malingering.

Dr. Dean testified that she performed several psychological tests on the appellant and that, based on his overall performance on these tests, she concluded that he was paranoid and "certainly suffering from serious mental illness." When asked for her diagnosis of the appellant, she testified that the most likely diagnosis was paranoid schizophrenia, but that he could have a "psychotic disorder due to a general medical condition . . . or some other type of brain damage," which could be checked

with a neurological examination. However, she also testified that he had a very severe mental defect "within the meaning of the law" and that at the time he pleaded guilty, he was not competent to do so, did not have the ability to consult with his counsel with a reasonable degree of rational understanding, and did not have a rational or factual understanding of the proceedings against him.

The appellant's plea counsel testified at the hearing that he visited the appellant numerous times at the Clay County jail while his case was pending and that during his visits, he was led to believe that the appellant had a mental illness. He testified that on several occasions the appellant was "zoned out" and would stare at the table and not respond to his questions. He also testified that the appellant had informed him that he suffered from epilepsy. He testified that he was led to believe that the appellant suffered from "an ongoing mental condition that needed to be addressed" after he learned that on or about February 7, 1997, he attempted to commit suicide by swallowing two AA batteries and smeared feces on himself and the walls. He testified that he had lingering doubts about the appellant's mental condition on June 12, 1997, when he orally renewed his motion for a second mental examination.

The appellant's plea counsel also testified that he did not secure a second independent mental examination of the appellant because he was not aware at that time that the Office of the State Public Defender would cover the expense of getting an independent mental examination and had he been aware of that policy, he would have gotten a second examination. He also testified that he was not aware of the existence of the appellant's records from the Clay County jail until after he pled guilty and was sentenced and had he known of their existence, he would have wanted to interview Dr. Ward and call him as a witness at the appellant's competency hearing on January 15, 1997. He admitted

that the appellant told him that he was seen by Dr. Ward at the jail and had been prescribed medication, but that he did not take any action to interview Dr. Ward. He further testified that he was not aware, prior to the appellant entering his guilty pleas, of the existence of Dr. Ajans's report following his examination of the appellant in February 1997. He stated that even though the examination and report were completed after the appellant's competency hearing on January 15, 1997, the report contained information that he would have wanted to present to the trial court before the appellant entered his guilty pleas. His plea counsel also admitted that while he was aware in May 1997 that the appellant had been transferred to the FCC, he did not attempt to get copies of the appellant's records from there because by the time he had been admitted there, his competency hearing had already been completed. Following the appellant's plea counsel's testimony, the case was continued to April 23, 1999.

On April 23, 1999, the State called Dr. Suthikant to testify. His testimony at the hearing was consistent with his earlier report and testimony at the appellant's competency hearing on January 15, 1997, finding that he was competent to proceed. The court took the appellant's Rule 24.035 motion under advisement. On July 1, 1999, the motion court issued its findings of fact and conclusions of law and entered its order denying the appellant's motion.

This appeal follows.

## Standard of Review

 Our review of the denial of a Rule 24.035 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 24.035(k); *Reynolds v. State*, 994 S.W.2d 944, 945 (Mo. banc 1999), *cert. denied*, 528 U.S. 1120, 120 S.Ct. 944, 145 L.Ed.2d 820 (2000). Findings and conclusions are clearly erroneous only if, after review of the entire record, we are left with a definite and firm impres-

sion that a mistake has been made. *Reynolds*, 994 S.W.2d at 945.

## I.

In Point I, the appellant claims that the motion court erred in denying his Rule 24.035 motion for post-conviction relief because its finding that he was competent to plead guilty, and thus, his pleas were voluntary, was clearly erroneous in that: (1) "the court's competency determination was based on incorrect and unreliable testimony provided by the state's expert"; and (2) "the court placed undue emphasis on Hubbard's demeanor at the plea and sentencing proceedings." As to the appellant's claim, the motion court found that:

Movant claims he was incompetent at the time of his plea and that acceptance of a plea from an incompetent person violates Section 552.020 of our statutes, which prohibits the trial, conviction or sentence of any person who as the result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.

The evidence that Movant had no mental disease or defect which caused him to lack the necessary capacity is persuasive. The evidence to the contrary is not. The Court has the benefit of the record made at the time of the plea and sentence, as well as the benefit [o]f being a participant in making the record in the first instance. Nothing about the Movant's demeanor, mannerisms, or way of responding to questions or statements raised any suspicion of incompetency to proceed. It is found that Movant did not lack the necessary capacity when he pleaded guilty and when he was sentenced.

The court finds that Movant was competent at the time of his plea. He had a mental disease or defect, but this mental disease or defect did not cause him to lack the capacity to understand the proceedings against him or to be unable to assist in his own defense.

For the reasons discussed, *infra*, we cannot say that these findings are clearly erroneous.

■ "Due process requires that a person who wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily." *State v. Shafer*, 969 S.W.2d 719, 731 (Mo.*banc* 1998), *cert. denied*, 525 U.S. 969, 119 S.Ct. 419, 142 L.Ed.2d 340 (1998). *See also State v. Tilden*, 988 S.W.2d 568, 577 (Mo. App.1999) (holding that "[i]t is a violation of a defendant's due process right to a fair trial to convict and sentence him while he is legally incompetent"). This is so in that "a guilty plea is a waiver of several constitutional rights," *Shafer*, 969 S.W.2d at 731, and " 'it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right[s]....' " *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir.1990) (*quoting Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815, 821 (1966)).

■ "The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [or plead guilty]." *Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App.1998). "In fact, an accused may be mentally retarded in some degree and still be competent to stand trial or enter a knowing, intelligent plea of guilty." *Id.; State v. Frezzell*, 958 S.W.2d 101, 104 (Mo.App.1998). "The test for competency is 'whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[,] and whether he has a rational as well as [a] factual understanding of the proceedings against him.' " *Woods v. State*, 994 S.W.2d 32, 36 (Mo. App.1999) (*quoting State v. Vansandts*, 540 S.W.2d 192, 202 (Mo.App.1976)). In this respect, § 552.020.1 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

In this point, the appellant is attacking the sufficiency of the evidence to support the motion court's finding that he was competent to plead guilty and as such, that his plea was voluntary. Specifically, he is contending that in determining his competency to plead, the court should not have relied on the testimony of the State's expert witness, Dr. Suthikant, and should have given little weight, if any, to his responses and demeanor at the plea and sentencing proceedings. We disagree.

## A. Court's Reliance on Testimony of State's Expert

■ It is well settled in the law that we are to pay deference to the motion court's superior opportunity to judge a witness's credibility. *Perry v. State*, 11 S.W.3d 854, 858 (Mo.App.2000); *Jenkins v. State*, 9 S.W.3d 705, 707 (Mo.App.1999). The court is free to believe or disbelieve the testimony of any witness, even if uncontradicted. *Colbert v. State*, 7 S.W.3d 471, 474 (Mo.App.1999). Here, the record reflects that the motion court, as well as the plea court, which were the same, found Dr. Suthikant's testimony to be credible and never wavered from its reliance on the same in finding the appellant competent to proceed. The appellant contends that it did in that after the competency hearing it agreed with Dr. Suthikant that the appellant was *not* suffering from a mental disease or defect and was a malingerer, and after the motion hearing, it found to the contrary. From this, he contends that because the court had rejected Dr. Suthikant's findings, it necessarily had accepted the appellant's evidence to the contrary, such that, other than the court's personal observations, which according to him were not sufficient on which to base a finding of competency, the court lacked the required evidence on which to base a finding of competency. The record does not support such a contention.

After the competency hearing, the court found: "I find on the basis of the evidence that the Defendant does not have a mental disorder that *falls* within the meaning of mental illness described in Chapters 552 and 630 of the Revised Statutes of Missouri." (Emphasis added.) Any fair reading of this finding makes it clear that the court was not finding that the appellant did *not* have a mental disease or defect, but only that he did not have a mental disorder that fell within the definition of mental illness as defined in Chapter 552. This was consistent with Dr. Suthikant's report which stated, in pertinent part: "It is the opinion of these examiners that the accused has a mental disorder of Antisocial Personality Disorder, Depressive Disorder NOS, and Polysubstance Abuse but none of those mental disorders fall within the meaning of mental illness as described in Chapter 552 and Chapter 630, RSMo." After the motion hearing, the court found:

> The court finds that Movant was competent at the time of his plea. He had a mental disease or defect, but this mental disease or defect did not cause him to lack the capacity to understand the proceedings against him or to be unable to assist in his own defense.

We fail to see how this finding is contrary to the court's finding after the competency hearing or the finding of Dr. Suthikant throughout, that the appellant was competent to proceed. As such, contrary to the appellant's contention, it is clear from the record that the motion court, as did the plea court, relied on Dr. Suthikant's findings in determining that the appellant was competent to proceed.

The appellant makes several additional arguments as to why the court below was in error in relying on Dr. Suthikant's testimony and findings: (1) that he only spent one hour and forty minutes with him, as opposed to the appellant's expert, who spent three hours and fifteen minutes; (2) that information provided to the court about the appellant's medical records not reflecting that he had sustained a head injury when he was a boy was misleading; and (3) that his evaluation was not thorough because he did not verify the medications the appellant was taking, he did not perform any psychological testing, and he discounted the appellant's past seizures. As to the time spent with the appellant, we find no basis for concluding that one hour and forty minutes was, *per se*, insufficient. As to providing misleading information regarding a past "head injury," even assuming that this was the case, this would only go to the weight of the evidence when viewed in light of all the evidence in the record, which the appellant concedes included the records which indicated that he had hit his head when he was two and four, causing him to lose consciousness. Dr. Suthikant testified at the motion hearing that he did not consider this medically as a "head injury." The motion court had before it all this evidence. In any event, we cannot say that this factor should have reasonably caused the court to totally disregard all of Dr. Suthikant's findings. Finally, as to the thoroughness of Dr. Suthikant's examination, the appellant was free to argue that point at the hearing, which he did, and the court was free to give this argument the weight it felt was warranted. Much of this argument centered around what the appellant's expert thought was required to adequately evaluate him as opposed to what Dr. Suthikant thought was necessary, which was a matter for resolution by the motion court.

When reduced to its essence, the appellant's argument is nothing more than his disbelief as to how Dr. Suthikant reached his determination that the appellant was competent to proceed in light of the records brought to light before the motion court. In this regard, he points out the fact that the records showed that he had been committed to the state hospital when he was younger and was prescribed an anti-psychotic drug. Although the psychiatrist who recommended that he be committed described him as "borderline psy-

chotic," when he was discharged there was no evidence found of psychosis. He also points to the jail and prison records which indicated that he suffered from seizures and hallucinations and had been diagnosed as having an "organic mental disorder" or "chronic schizophrenia" requiring medication. He further points to bizarre behavior while incarcerated, such as swallowing batteries and smearing feces on himself. Finally, he champions his expert's testimony that he was not competent to proceed because he suffered from paranoid schizophrenia.

■■■ Accepting the fact that the appellant's evidence was contradictory to that of the State, this is not a sufficient basis for us to determine that the motion court erred in finding that the evidence would support a finding of competency. Even accepting the appellant's evidence that he suffered from a mental disorder, including paranoid schizophrenia, does not mean he was incompetent to proceed. In *State v. Jaynes*, 949 S.W.2d 633 (Mo.App.1997), the Eastern District of this court affirmed the trial court's determination of competency despite the finding by the court that:

> Defendant suffers from a mental disease, namely delusional disorder (paranoid/persecutory). She is actively psychotic, and is medicated with an antipsychotic drug, Mellaril. However, she does not lack the capacity to understand the proceedings against her and is currently capable of assisting in her own defense.
>
> Therefore, the Court finds that Defendant is competent to proceed.

*Id.* at 637. There, the State's expert testified that:

> he had reviewed Defendant's medical records and found that Defendant had three other diagnoses of mental disease. He agreed that Defendant suffer[ed] from a delusional disorder of the persecutorial type, which was not curable but treatable and controllable through antipsychotic medication. He further testified that Defendant had an excellent

understanding of the charges against her, as well as her plea bargain options, the range of punishment, and the fact that she would not have to testify.

*Id.* at 637–38. The *Jaynes* court, in affirming the trial court's determination of competency, held: "Although there was conflicting evidence regarding Defendant's competency, it is within the trial court's province to resolve the conflict." *Id.* at 638. Stated another way by this court in *State v. Frezzell*, 958 S.W.2d 101 (Mo.App. 1998): "The actual presence of some degree of mental illness or need for treatment does not necessarily equate with incompetency to stand trial." *Id.* at 104.

Having reviewed Dr. Suthikant's report and his testimony in both the competency and motion hearings, when coupled with the motion and plea courts' observations, which we discuss, *infra*, we are not firmly convinced that the motion court's finding of competency was in error.

### B. Court's Reliance on Its Personal Observations

Finally, the appellant contends that the motion court placed undue emphasis on its own personal observations of the appellant's demeanor at the plea and sentencing proceedings. We disagree.

■■■ While a defendant's demeanor may not be dispositive of his or her competency to stand trial, *Bouchillon*, 907 F.2d at 593, the court is certainly free to consider demeanor when determining competency and give it the weight it determines is warranted. *State v. Wise*, 879 S.W.2d 494, 507 (Mo. *banc* 1994); *Wise v. State*, 785 S.W.2d 325, 326 (Mo.App.1990); *Reynolds v. Norris*, 86 F.3d 796, 800 (8th Cir.1996). In this regard, the court found:

> The evidence that Movant had no mental disease or defect which caused him to lack the necessary capacity is persuasive. The evidence to the contrary is not. The Court has the benefit of the record made at the time of the plea and sentence, as well as the benefit

[o]f being a participant in making the record in the first instance. Nothing about the Movant's demeanor, mannerisms, or way of responding to questions or statements raised any suspicion of incompetency to proceed. It is found that Movant did not lack the necessary capacity when he pleaded guilty and when he was sentenced.

A thorough reading of the record would substantiate that the appellant appeared to be well aware of the nature of the proceedings and understood the questions being asked by the court. Thus, we cannot say that to the extent the motion court relied on its observations of the appellant at the plea and sentencing proceedings in making its determination of the appellant's competency, it was error.

For the reasons stated, we find that the evidence was sufficient for the motion court to find that the appellant had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and ha[d] 'a rational as well as factual understanding of the proceedings against him,' " *Wise*, 879 S.W.2d at 507 (*quoting Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960) (per curiam)), and that its findings and conclusions in this regard, in denying the appellant's Rule 24.035 motion, were not clearly erroneous.

Point denied.

## II.

In Point II, the appellant claims that the motion court erred in denying his Rule 24.035 motion because he received ineffective assistance of counsel in that his plea counsel failed to adequately investigate his mental health status, failed to have an independent mental examination performed, and allowed him to plead guilty despite his own doubts about the appellant's competency to do so. He claims that if his counsel had investigated his mental health status more thoroughly, including obtaining a second mental examination, and presented such evidence to the trial

court prior to the time he entered his guilty pleas, the court would have found that he was incompetent to plead guilty and would not have accepted his pleas. As to the appellant's claim, the motion court found that:

Movant claims that he did not receive the effective assistance of counsel in the proceedings which culminated in a plea bargain, the pleas, and the sentences.... It is claimed that counsel failed to adequately investigate Movant's mental health status before the guilty plea; that counsel failed to have an independent expert examine Movant to determine if he was competent at the time of the offense and competent to plead guilty; and that counsel allowed Movant to plead guilty when counsel doubted, or had reason to doubt, Movant's competency to plead guilty.

. . .

As to the second factual basis, counsel did fail to use the required skill. It was a rookie mistake, made by a hard working young lawyer dedicated to serving his clients' interests to the best of his ability. Nevertheless, Movant did not get the representation that is his constitutional right.

The next question is whether Movant was prejudiced by counsel's lack of awareness. All of the evidence has now been gathered, including the jail records referred to above. The independent mental examination which could have been conducted before the plea or trial has now been conducted. On the basis of the evidence presented in this case, which includes all of the evidence which was, or should have been, submitted in the underlying criminal case, it is found that defendant was competent to plead guilty and to be sentenced. Counsel's lack of knowledge[1] that clients of the Public Defender could have independent mental examinations did not prejudice the movant. The legal conclusion is that Movant must satisfy a two-prong test by showing both a lack of skill and prejudice thereby. The factual finding is that Movant was not prejudiced.

To prevail on a claim of ineffective assistance of counsel, the movant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), requiring proof by a preponderance of the evidence that: (1) his or her counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) he or she was prejudiced as a result. *Sams v. State*, 980 S.W.2d 294, 296 (Mo. *banc* 1998). If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and the movant's claim of ineffective assistance of counsel must fail. *State v. Nunley*, 980 S.W.2d 290, 292 (Mo. *banc* 1998), *cert. denied*, 526 U.S. 1100, 119 S.Ct. 1580, 143 L.Ed.2d 674 (1999). The movant bears the burden of proving his or her grounds for relief by the preponderance of the evidence. *Id.;* Rule 24.035(i). To satisfy the performance prong, the movant must overcome the presumptions that "the challenged action was sound trial strategy" and that counsel "rendered adequate assistance" and "made all significant decisions in the exercise of reasonable professional judgment." *Nunley*, 980 S.W.2d at 292.

As to the prejudice prong, where a movant has pleaded guilty the prejudice prong " 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.' " *Coates v. State*, 939 S.W.2d 912, 914 (Mo. *banc* 1997) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985)). Normally to satisfy the prejudice prong in the context of a guilty plea, a movant "must show a reasonable probability that, but for counsel's unprofessional errors, [he] would not have pleaded guilty and would instead have insisted upon going to trial." *Nunley*, 980 S.W.2d at 292. Thus, generally " 'once a plea of guilty has been entered, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea.' " *Redeemer v. State*, 979 S.W.2d 565, 569 (Mo.App.1998) (*quoting Roland v. State*, 824 S.W.2d 526, 529 (Mo. App.1992)). However, a movant's claim that his or her counsel was ineffective for failing to properly investigate his or her mental health status and present such information to the court "does not lend itself very well to the 'outcome' test in *Strickland.*" *Bouchillon*, 907 F.2d at 595 n. 20. Since to allow an incompetent person to plead guilty is a *per se* due process violation, whether an incompetent person would still have pled guilty despite his or her counsel's ineffective assistance is irrelevant. *Id.* Instead, in such a situation, "[w]ith respect to the prejudice prong of a claim of ineffective assistance of counsel, [the movant] need only demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome.' " *Id.* (*quoting Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). "This is a lower burden of proof than the preponderance standard." *Id.* As such, in the context of a guilty plea where the movant has alleged that he or she was incompetent to plead guilty and his or her counsel was ineffective for failing to adequately investigate his or her mental health status, in determining whether the movant was prejudiced by his or her counsel's ineffective assistance, the motion court must first determine whether there was a reasonable probability that the movant was incompetent. *Id.* If the motion court determines that there was not a reasonable probability that the movant was incompetent, the inquiry can proceed to a second level, where the court determines whether the movant, but for his or her counsel's unprofessional errors, would not have pleaded guilty and would instead have insisted upon going to trial.

In this case, our holding in Point I on the issue of the appellant's competency to plead guilty disposes of the prejudice prong on his claim of ineffective assistance of counsel. In Point I, we held that the motion court's finding that the appellant was competent to proceed was not clearly

erroneous. As such, even if the appellant could satisfy the performance prong test by showing that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances when he allowed him to plead guilty despite his doubts as to his competency and failed to adequately investigate his mental health status and have an independent mental examination performed, he was not prejudiced.[3] *See Reece v. State,* 891 S.W.2d 863, 866 (Mo.App.1995) (holding that where a movant has filed a Rule 24.035 motion for post-conviction relief after pleading guilty, alleging as grounds for relief that he was incompetent to plead guilty and he received ineffective assistance of counsel because his counsel failed to investigate his competency to plead guilty and failed to litigate that issue, the court's finding that the evidence supported the motion court's finding that the movant was competent to plead guilty rendered his claim of ineffective assistance of counsel "moot" because he was not prejudiced by any alleged deficient performance on the part of his counsel); *Bouchillon,* 907 F.2d at 595 (holding that where the petitioner filed a petition for a writ for habeas corpus following guilty pleas alleging that he was incompetent to plead guilty and he received ineffective assistance of counsel because his counsel failed to investigate his competency to plead guilty, in addressing his ineffective assistance of counsel claim, the court's "ruling on the issue of incompetence in fact [where it found him incompetent to plead guilty] disposes of the prejudice prong of the *Strickland* test because if [the petitioner] was incompetent his plea was ineffective and he was prejudiced by its entry"). As such, we cannot say that the motion court's findings and conclusions in denying the appellant's Rule 24.035 motion as to this claim were clearly erroneous.

Point denied.

**3.** The appellant does not claim on appeal that if this court finds that the motion court's finding that he was competent to plead guilty was not clearly erroneous, then he was still

## Conclusion

The order of the motion court denying the appellant's Rule 24.035 motion for post-conviction relief, after an evidentiary hearing, is affirmed.

SMART, J., concurs.

BRECKENRIDGE, P.J., dissents in separate opinion.

PATRICIA BRECKENRIDGE, Judge, dissenting.

I respectfully dissent. The majority correctly states the law governing the determination of a criminal defendant's competency to stand trial and to enter a plea of guilty. The majority misapplied this law, however, in reaching its conclusion that the motion court's findings and conclusions were not clearly erroneous and that Mr. Hubbard did not suffer a manifest injustice. To the contrary, the motion court clearly erred in determining that the weight of the evidence supported the motion court's finding that Mr. Hubbard was competent to proceed and that he was not prejudiced by his defense counsel's failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances.

At the time of his guilty plea, Mr. Hubbard suffered from a chronic mental illness. There was extensive credible evidence that he was actively psychotic throughout the time the criminal charges were pending, and he was determined by a psychologist-attorney at the Missouri Department of Corrections to have a very severe mental defect "within the meaning of the law," prior to the time he entered his guilty plea. Dr. Suthikant's testimony that Mr. Hubbard did not have a mental illness and he was a malingerer was rejected by the motion court. Nevertheless, the motion court, and this court in affirming its judgment, finds that Mr. Hubbard's

prejudiced by his counsel's ineffective assistance because but for the ineffectiveness of his counsel, he would not have pleaded guilty and would have insisted upon going to trial.

demeanor at the time he entered his plea of guilty and his responses to questions asked provided sufficient evidence to outweigh the evidence of his active, severe mental illness. I disagree. The weight of the evidence proves that Mr. Hubbard's mental illness was a mental disorder that falls within the definition of mental illness as defined in Chapter 552. Mr. Hubbard should have been permitted to withdraw his guilty plea because he lacked the mental capacity to understand the proceedings against him and to assist in his defense. Section 552.020.1.

The motion court clearly erred in determining that Mr. Hubbard's demeanor on the day he entered his guilty plea outweighed the extensive evidence that he was suffering from a chronic mental illness with active hallucinations at the time he entered his guilty plea. Mr. Hubbard will suffer a manifest injustice if he is not allowed to withdraw his guilty plea. The motion court's judgment should be reversed and the motion court should be directed to order that Mr. Hubbard be allowed to withdraw his guilty plea.