Michael WOODS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 55503.

Missouri Court of Appeals, Western District.

April 27, 1999.

Andrew Schroeder, Kansas City, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before: Presiding Judge JOSEPH ELLIS, Judge HAROLD LOWENSTEIN and Judge VICTOR HOWARD.

HAROLD L. LOWENSTEIN, Judge.

This is an appeal from the denial of Woods' Rule 24.035 motion. Woods, who had been charged with the murder of his estranged wife, pled guilty to one count of murder in the second degree and one count of armed criminal action. He was sentenced to twenty years for the murder charge, and three years for the armed criminal action charge with the sentences to be served concurrently. Although one of Woods' points on this appeal is to set aside his *guilty* plea because of mental problems, the dispositive issue in this appeal concerns Woods' mental competency to be *sentenced* — he asserts that either defense counsel, or the court, should have ordered an additional examination under § 552.020.2, RSMo 1994, because of his attempted suicide the day before his first sentencing date. Section 552.020.1 states:

> "No person who, as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense, shall be tried, *convicted or sentenced* for the commission of an offense so long as the incapacity continues" (Emphasis added).

Section 552.020 contains an additional thirteen subsections which set out the procedure for mental examinations and hearings where, under subsection two, ... "any judge has reasonable cause to believe that the accused lacks mental fitness to proceed...." Generally, where the court finds reasonable cause to believe the accused does not have the mental capacity to proceed, the statute provides for ordering mental examinations and hearings. If the accused is found incompetent, then he/she is committed to the department of mental health until he/she is determined competent to proceed. More facts will be supplied following a chronology of relevant events.

1990 December 31—Crime committed.

1991 January—Woods charged and announces he intends to rely on defense of mental disease and defect and also asserts he is not competent to proceed.

June—Court sustains Woods' April request for mental exam.

August 2—Dr. Mandracchia's report stating Woods lacked capacity to understand proceedings — no opinion on insanity defense. The report diagnosed Woods as a manic depressive.

1992 January—After hearing before Judge Wells, Woods found incompetent and committed by circuit court to Mental Health pursuant to § 552.020.8

October—Dr. Altomari reports that Woods still suffers from a mental disease, but regained capacity to understand proceedings and can assist in his defense, and that Woods was sane when the act was committed.

1993 February—Director of Mental Health files motion to proceed.

March—New attorney enters appearance for Woods.

April—Judge Randall finds Woods competent to proceed. Woods is released from the Department of Mental Health.

May through December—Woods files untimely motion for another Section 552 mental exam. New attorney withdraws, third lawyer enters case. Court appoints new doctor to examine Woods, but doctor declines because he

is not paid. (It was later learned the Woods' family advanced the money for the exam, but the lawyer never paid the doctor.)

1995 April—Third lawyer for Woods is disbarred. Attorney Anderson enters case as defense counsel.

May—October — Attorney Anderson on behalf of Woods files motion for second mental exam for both insanity defense and the ability to proceed. Court appoints Dr. Simmons to perform examination. Dr. Simmons says Woods suffers from mental illness (delusional) but is fit to proceed. Judge Martin finds Woods competent to proceed to trial based on Simmons' report.

1996 February—Lawyer withdraws. Public Defender Madeleine Cardarella is appointed.

May 7—Woods pleads guilty before Judge Martin to second-degree murder and armed criminal action. Woods is questioned at length by lawyers and court — he expressed some difficulty in remembering all the facts of the shooting, but did remember an argument with the victim, firing several shots at her with his mother's .357 magnum and then driving to Kansas City, Kansas where his car broke down. State agrees to twenty-year sentences for murder, and three years for armed criminal action—concurrent sentences. Woods testifies at plea hearing and answers questions. Court accepts plea agreement and defers sentencing to obtain a pre-sentence investigation. Sentencing hearing is scheduled for June 21.

June 21—On the morning of his sentencing hearing, Woods attempts suicide, however gun misfires. Police take Woods to Western Missouri Mental Health, where he stays for three days of treatment. The attempted suicide causes postponement of hearing. Sentencing date continued to July 12. Defense counsel does not request, nor does the court sua sponte order, an additional competency exam.

July 12 — At sentencing hearing the suicide attempt is noted only briefly by his counsel, "He did have a suicide attempt, which the Court is aware of. We all were made aware of by the police." It was also offered that the suicide weapon had misfired two times. Woods made a brief statement to the judge in which he said he had "never denied that this happened, although I don't think the Court is aware of the circumstances in which this took place." Defense counsel argued for less than twenty years. Court advised Woods it had accepted the plea agreement of 20 years, but he would have been inclined to give a longer sentence. Woods given twenty and three year sentences to be served concurrently.

July 17 — Woods delivered to the Department of Corrections, and timely files a pro se Rule 24.035 Motion.

1997 October — Hearing on Rule 24.035 motion. The pertinent portions of the motion raised two issues: 1) prior counsel was ineffective for failing to inform him that under § 552.020.7, RSMo 1994, he had a right to contest the Simmons report of May 1995, and to request a hearing, and 2) (a) plea counsel, Cardarella, was ineffective for failing to request a mental exam after the June suicide attempt, and (b) the sentencing judge denied his due process rights by failing to sua sponte order an additional § 552 competency exam.

At the Rule 24.035 hearing, Dr. Holcomb testified for Woods. Holcomb had reviewed the reports of Doctors Mandracia, Altamarie and Simmons. Holcomb had examined Woods several months prior to this hearing. He agreed with Simmons that Woods suffered from a schizo-effective or depressive disorder. He disagreed with Simmons that Woods was competent to stand trial, but more importantly, said that in the eight months between the Simmons' examination and the hearing, Woods did not take medication nor receive any treatment and was showing symptomatic psychosis up to the time of sentencing. Woods' mother had told Simmons that her son was sleeping with guns and knives under his pillow, suffering hallucinations, and being irrational and responding to

"unsecured stimuli." He opined this behavior was not unusual in a patient who had the disorders Woods had, and who had been institutionalized for treatment and medications for a period of time, and then returned to society. The witness characterized the suicide attempt as serious, and was consistent with Simmons' and the other medical examiners that Woods suffered from psychotic depression.

Defense attorney Cardarella testified she went to court the day of the original sentencing hearing and received a call from the tactical unit of the police department saying Woods had attempted suicide, and "Judge Martin ordered that he be taken to Western Missouri." Her answer to why she did not request another mental exam was as follows:

> "From what I can recall, Michael went to Western Missouri for not very long, I think less than three days. And when I spoke to him by telephone when he was back in the jail, my sense was that he understood what was happening and so I didn't request a mental."

She continued in a later answer of her interpretation of the attempted suicide,

> "I don't remember thinking gosh, I wonder if he was relapsing, so Michael had always been depressed when I talked to him. I guess I did not think gosh I wonder if he's relapsing back to a degree that would have rendered him incompetent."

■ Review from the denial of a Rule 24.035 motion is limited to a determination whether the findings of fact and conclusions of law were clearly erroneous. *Ennis v. State*, 887 S.W.2d 771, 772 (Mo.App. 1994); Rule 24.035(k). Findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992). Woods must show that counsel failed to use the customary skill and diligence a reasonably competent attorney would have exercised under the circum-stances, and that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1994). He must also show, overcoming a strong presumption of competence by counsel, that counsel was ineffective. *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). To show prejudice in a case involving a plea, the defendant must show that but for the errors of counsel, the defendant would not have entered a plea and would have insisted on a trial. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997).

■ Before addressing the points raised by Woods, the court reemphasizes the language of § 552.020 that a defendant must be competent to help counsel and understand the proceedings all the way through sentencing. The issue of competence is not waived once the trial begins — a court must confront and determine the issue at any stage, including taking a plea and sentencing. *State v. Clark*, 546 S.W.2d 455, 468 (Mo.App.1976); *Tiller v. Esposito*, 911 F.2d 575, 578 (11th Cir. 1980); *State v. Bolden*, 671 S.W.2d 418, 420 (Mo.App.1984). The test for competency is "whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him." *State v. Vansandts*, 540 S.W.2d 192, 202 (Mo.App. 1976).

■■ This court has recently handed down an opinion in S*tate v. Tilden*, 988 S.W.2d 568 (Mo.App.W.D., 1999). in which the background and underpinnings of § 552.020 are discussed. Omitting citations, under the opinion in *Tilden*, it is a violation of a defendant's due process right to a fair trial when the defendant is tried and sentenced while mentally incompetent. The protection of this right is to be shared by the court, defense counsel and the judge. *Id.* at 578–79. In fact, the court sua sponte may order a mental exam at

any stage prior to sentencing. *Id.* at 573–74; Section 552.020.2. This protection is of primary importance, and the responsibility for protection rests with the defense counsel, the court and the prosecutor. *Id.* at 574. When sufficient information comes before the court regarding mental incompetency, in the words of the statute, to raise a reasonable cause of incompetency, then the court has a non-relenting duty, even if counsel has not raised the issue, to order a mental exam, and the failure to do so will be "reviewed carefully because of the constitutional implications." *Id.* at 577.

■ The guiding issue of appellate review where the court has *not sustained or instituted* an order for a mental exam under § 552.020.2, is not whether the defendant was truly competent to stand trial, but, rather, whether the failure to order an exam under the circumstances constituted a denial of due process. *Reynolds v. Norris,* 86 F.3d 796, 801 (8 th Cir.1996). Whether reasonable cause existed to have ordered an exam is reviewed by determining if a reasonable judge in the same situation as the trial judge, should have experienced doubt as to the accused's competency. *State v. Tokar,* 918 S.W.2d 753, 762—64 (Mo. banc 1996). Where a motion has been presented to the court, the trial court has broad discretion in denying a defendant's motion for an exam, and is not a mere "automaton" to grant such motions just because they have been filed. *U.S. v. McEachern,* 465 F.2d 833, 837 (5 th Cir.1972); *State v. Bolden, supra,* 671 S.W.2d at 419.

## COMPETENCY TO PLEAD GUILTY

■ Woods' first point seeks to set aside his guilty plea. His point is confusing in that he appears to present several different reasons for his desired ultimate result. He claims attorney Anderson's representation fell below the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances for failing to request relief from the 1995 Simmons' opinion rendered pursuant to § 552.020.7. That portion of the statute gives the accused a right to contest the finding of such a report by way of a "hearing on the issue." At such a hearing the party contesting the opinion would have a right to cross-examine the person making the report and to offer evidence of the person contesting the finding. Woods' post-conviction argument is that had he known of this right, and the chance to overturn the Simmons' report finding him competent to proceed, he would not have entered a plea during his representation by Ms. Cardarella. He also alludes to Dr. Holcomb's testimony that Woods was likely suffering some "blocking" of memory at the time of his plea testimony. He further alleges this failure to counteract the Simmons report allowed Judge Martin to rely solely on the Simmons report. Finally, he seems to take solace in § 552.020.11(3), which in pertinent part covers the procedure for exams and hearings after a person has been committed to and is confined in the department of mental health. He relies on language in *Miller v. State,* 498 S.W.2d 79, 87 (Mo.App.1973), where this court held that counsel was deficient when despite having "serious doubts" as to competency, he neither objected to a doctor's certification, nor informed the client of his right to a hearing, but merely advised him to plead guilty.

■ At first blush, there appears merit lurking in Woods' point[s]. However, he seeks to set aside his plea of guilty on the basis that he was incompetent to assist counsel or understand the proceedings. Despite a long history of mental illness, there was nothing in May of 1996 to indicate to counsel, the prosecutor, or the plea court that Woods was incompetent to proceed. Even if Anderson erred in not attempting to erase the Simmons conclusion in 1995, which concluded that Woods was competent to proceed at that time, nothing in Anderson's actions foreclosed anyone from later requesting an exam on the basis

of lack of competency at the time of the plea hearing. The statute and common law regarding this issue have the same effect, that the duty to request an exam and then a hearing is a continuing one and may be raised at any time prior to sentencing and judgment, so long as reasonable cause exists for questioning the defendant's mental competency.

Anderson's actions or decisions vis-à-vis the Simmons report, even if falling below the applicable standard, did not prejudice Woods. There is nothing in this record to have raised a reasonable cause that Woods was not competent to have pled guilty. Plea counsel had no such doubts, and there was nothing before the court, either in Woods' testimony or actions, or otherwise which would have caused the necessity of a competency exam or hearing. Absent any manifestations of mental incompetency, plea counsel was not deficient in recommending or handling the plea. *Baird v. State*, 906 S.W.2d 746, 749 (Mo.App.1995). Therefore this point and all its facets are without merit and are denied. The motion court's findings and conclusions on this point are not clearly erroneous. Rule 24.035(k).

### COMPETENCY TO BE SENTENCED

Although occurring only two months following the guilty plea, the issue of mental competency at the time of sentencing, and whether under the facts, counsel should have requested a mental exam under § 552.020.2, presents a more difficult question. Should counsel have requested, or the court ordered, a mental exam on Woods considering the attempt he made on his life on the first scheduled sentencing hearing date, the subsequent three-day stay in a mental health facility, coupled with his extensive history of serious mental health problems, including some fifteen months in a mental health facility ordered in this very same case?

"Before ordering a psychiatric examination, the trial court should have reasonable cause to believe that the defendant has a mental disease or defect excluding fitness to proceed, whether from evidence adduced or from its personal observation of the defendant." *Guinan v. State*, 726 S.W.2d 754, 757 (Mo.App.1986).

While no single factor is necessarily determinative, and with no fixed signs that point to need for further inquiry, each case must be determined on the merits. *State v. Moon*, 602 S.W.2d 828, 835 (Mo.App.1980), sets out four factors when, "considered as a whole," imply possible mental incompetency:

> Likewise, in the instant case, the trial court should have been alerted to a possible lack of competency to stand trial in light of all the facts . . .
>
> (1) prior commitments to mental institutions for evaluations;
>
> (2) inappropriate behavior and responses on the witness stand;
>
> (3) the bizarre circumstances of the criminal activity in the instant case;
>
> (4) the nature of the prior offenses causing the earlier examinations.

As *Moon* and other cases point out, for counsel or the court to order an exam or conduct a competency hearing, there must be circumstances which render suspect the psychiatric opinion which certified the accused fit to proceed. *Id.* In the case at bar, the second factor of *Moon*, and one of the more obvious factors to raise a doubt of competency, "inappropriate behavior and responses from the witness stand," is not raised nor presented in the actual sentencing transcript. However, the lack of the presence of this factor does not require a holding that the accused was competent to proceed. In a case where the defendant had an extensive history of serious mental disorders, the Supreme Court said, "[w]hile Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Pate v. Robinson*, 383 U.S.

375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

In deciding the ultimate issue contained in this point, whether the suicide attempt in May was sufficient, standing alone, to have prompted counsel to file for a new exam prior to sentencing, several cases are instructive. In *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the defendant who had a history of mental problems, though not as extensive as the defendant in *Pate v. Robinson*, made an attempt on his life during trial. The trial court did not abate the proceedings, and the Supreme Court reversed in an opinion stating that even if a defendant is competent at the start of trial, counsel and the court "must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence. . . ." *Drope, supra* at 181, 95 S.Ct. 896. The Court there held there was "a failure to give proper weight to the information suggesting incompetence which came to light during trial. This is particularly so when viewed in the context of the events surrounding petitioner's suicide attempt and against the background of the pretrial showing." *Id.* at 179, 95 S.Ct. 896. In *U.S. v. Mason*, 52 F.3d 1286, 1287 (4th Cir.1995), the defendant attempted suicide just before the forfeiture phase of the proceedings and then claimed an abuse of discretion for failing to order a competency exam during the first phase of trial. *Id.* at 1288. Relying on the language in *Drope* and *Pate*, the court held the suicide attempt coupled with evidence of mental disorders, clearly gave rise to reasonable cause to believe the defendant may have been incompetent. *Id.* at 1293. In *Tiller v. Esposito, supra*, 911 F.2d at 578, the trial judge, when accepting the plea and imposing sentence, wrote a letter to the Department of Corrections urging a review of the defendant's mental condition. The court held those facts raised sufficient doubt of competency to have warranted further inquiry.

Defense counsel's testimony at the post-conviction hearing was that following the suicide attempt she felt Woods "understood what was happening" and ". . . was okay now." This was not counsel's call. Abundant prior evidence of mental incompetency, the time spent in the custody of Missouri's Department of Mental Health, the suicide attempt, and the trial judge's having sent him to a local mental health facility for three days, raised reasonable cause for counsel to have filed for a mental exam prior to sentencing.

Woods states he wanted to fully explain the facts of the shooting to the judge at sentencing. His due process rights flowing out of § 552.020 afford him the right to do so while competent. There was reasonable cause under these facts, that he should have had an exam, and possibly a hearing prior to sentencing. As in *Tilden*, the problem is presented in affixing an adequate remedy. It can be argued that the prejudice prong required to obtain post-conviction relief is lacking in this case. *Howard v. State*, 698 S.W.2d 23, 24 (Mo. App.1985). The sentencing judge was forthright in explaining that by accepting the plea agreement he was foreclosed from imposing a greater sentence he thought was merited. It may very well be that after remand for sentencing, the result may be the same, but due to the constitutional implications of the claim raised here, then this court will, nonetheless, remand the case for sentencing.

The judgment is affirmed as to the guilty plea, but is reversed and remanded solely for the purposes of sentencing. Before sentencing, the trial court is to order a competency exam pursuant to § 552.020.2, and then, if appropriate under § 552.020, order a hearing as to Woods' competency to be sentenced. The sentencing is to occur after the court determines Woods is competent.

All Concur.