**STATE of Missouri, Respondent,**

v.

**Derik Benjamin YEAGER, Appellant.**

**No. WD 60866.**

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

Irene Karns, Assistant State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Adriane Course, Assistant Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Appellant Derik Yeager appeals his convictions of first-degree burglary, § 569.160, RSMo 2000,[1] second-degree assault, § 565.060, RSMo; and armed criminal action, § 571.015, RSMo. He raises two points on appeal. He first contends that the trial court erred in denying his counsel's oral motion requesting a second mental examination under § 552.020, RSMo. In his second point, he argues that the trial court erred in failing to *sua sponte* order a second mental examination. Finding no error, we affirm.

## Factual and Procedural Background

The charges against Yeager arose as the result of an assault upon Matthew Thomure. Yeager believed that Thomure was intimately involved with Raven Johnson, whom Yeager had apparently attempted to romantically pursue for several years, under a belief that Ms. Johnson loved him.[2] Yeager had challenged Thomure to a duel, for the purpose of proving his love to Ms. Johnson. Yeager's challenge was also prompted by an apparent belief that Ms. Johnson had displayed suicidal tendencies. Prior to the assault, Yeager had left several notes and other items outside of Thomure's residence that were quite eccentric in nature.

In August 2001, after the charges were filed, the circuit court ordered a mental examination of Yeager, to assess his competency to stand trial. The examiner reported Yeager's behavior as eccentric or peculiar and characterized his speech patterns as "odd" and "circumstantial." Diagnoses of mental illness were made, specifically narcissistic personality disorder and schizotypal personality disorder. The examiner also reported that Yeager had a history of alcohol and drug abuse. Despite these observations, the examiner's report concluded that Yeager's mental condition did not "interfere[ ] with his ability to reasonably communicate and cooperate effectively with legal counsel." The examiner's report also indicated that Yeager understood the nature of the proceedings and could effectively assist his attorney.

On October 10, 2001, nine days prior to trial, defense counsel made an oral motion requesting that a second mental examination be conducted. In his motion, counsel stated that "[c]ircumstances have changed markedly since the first mental evaluation. . . . [M]y client's reasoning abilities and his processes and attitudes have become more difficult for me to understand." The prosecutor conceded that defense counsel appeared to have "a valid concern." The trial court denied that motion, however, indicating its belief that Yeager was entitled to only one mental examination.

The charges were tried to the court, sitting without a jury. He was found guilty of the offenses and a pre-sentencing

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. This belief appears to be ill founded, as the record indicates that Ms. Johnson had previously applied for *ex parte* orders of protection against Yeager.

report was requested. The report prepared by probation and parole suggests that Yeager's explanation of the incident was difficult to understand. The contents of the balance of the report, however, suggest that Yeager was cooperative and yielded intelligible information regarding his background and personal history. The conclusion of the report recommended that Yeager be placed on probation for the purposes of treatment, due to his prior history of drug abuse and psychological problems. The trial court did not follow that recommendation, however, instead sentencing Yeager to seven years imprisonment for each offense, with those sentences to run concurrently.

## Discussion

On appeal, Yeager does not contest his criminal liability for the offenses charged; instead, he challenges the trial court's refusal to grant him a second competency evaluation. He contends that a second evaluation would have established that he was not competent to proceed with trial.

 The Due Process Clause prohibits prosecution of a defendant who is incompetent. *Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In this context, competency denotes the capacity to understand the legal aspects of the proceedings and the ability to assist in one's own defense. *State v. Johns*, 34 S.W.3d 93, 104 (Mo. banc 2000). It is important to note, however, that a person can suffer from some degree of mental illness and still be competent to proceed with trial. *See State v. Frezzell*, 958 S.W.2d 101, 104 (Mo.App.1998).

A mental examination must be ordered if the trial judge has reasonable cause, at any stage of the proceedings, to believe that the defendant lacks competency. Section 552.020.2, RSMo; *State v. Messenheimer*, 817 S.W.2d 273, 278 (Mo.App. 1991). No party need request the mental examination, as the trial court may order the examination *sua sponte*. Section 552.020.2, RSMo.

 Here, the trial court erroneously took the position that only one mental examination could be ordered. Section 552.020.2 clearly provides for multiple mental examinations.[3] Indeed, the failure to order a second mental examination can constitute a violation of due process. *See Woods v. State*, 994 S.W.2d 32, 36–37 (Mo. App.1999). In determining whether a second mental examination is necessary, the trial court is vested with broad discretion. *Id.* at 37. That discretion, however, is abused when "a reasonable judge in the same situation as the trial judge, should have experienced doubt as to the accused's competency." *Id.* That said, trial courts are not required to grant every request for additional mental examinations. As stated previously, to be entitled to a second mental examination, there must be reasonable cause to doubt the defendant's competency.

 The State argues that the trial judge did not abuse his discretion. However, erroneous statement of the law clearly indicates that the court was not exercising any discretion. Discretion is the choice between two or more courses of action none of which is unreasonable or contrary to the law. *Kansas City Power & Light Co. v. Jenkins*, 648 S.W.2d 555, 562 (Mo.App.1983) (If the reviewing court finds that a court is faced with a choice between alternative legal rules that did not yield a result contrary to law, then the

---

**3.** That statute further provides, however, that the cost of subsequent evaluations is to be paid by the party requesting the evaluation, whereas the first examination is provided at no cost by the Department of Mental Health. *Id.*

review is complete and the trial court will be affirmed, regardless of the choice made.) The trial judge erroneously stated that he had no choice. We are not required to give deference to discretion when no discretion has been exercised. Rather, we must independently review the record to determine whether there was a reasonable basis for requiring a second mental exam.

 In support of his arguments on appeal, Yeager first contends that the record made by his trial counsel regarding the oral motion provided a reasonable basis to doubt his competency to proceed with trial. Generally, it is the burden of the accused to establish that he is incompetent to proceed with trial. *Frezzell,* 958 S.W.2d at 104. As stated previously, the evaluation conducted in August 2001 found that Yeager was competent to proceed with trial. Thus, it fell to defense counsel to present information to the court by documents, witnesses or counsel's own observations and statements that tended to show that circumstances had changed since the first mental examination and that this change of circumstances necessitated a second evaluation.

 That record shows that Yeager's counsel advised the judge that the defendant had become more difficult to understand. Beyond that assertion, there was no evidence or suggestion in the record, however, that tended to show that Yeager was no longer capable of understanding the proceedings or had become incapable of assisting in his own defense.[4] To trigger the trial court's duty to order a mental examination, "[t]here must be evidence tending to show incompetency or it must appear to the trial court from personal observation that the defendant is incompetent." *Guinan v. State,* 726 S.W.2d 754, 757 (Mo.App.1986). While the court may consider statements by counsel regarding a client's mental state, "naked assertion[s] that the accused is incompetent does not provide the trial court with reasonable cause to believe that the psychiatric examination is required." *Id.* As there was no evidence or sufficient statements by counsel on the issue, the trial court did not have reasonable cause to suspect that Yeager was no longer competent to proceed with trial. The trial court did not, therefore, err in refusing the oral motion for a second mental examination. Point denied.

 The trial court, though, may still have been placed under the duty to order a second mental examination if Yeager's observed behavior gave rise to reasonable doubts regarding his competency. In his second point on appeal, Yeager contends that the trial court erred in failing to *sua sponte* order a second mental examination. Here, the record shows that Yeager's conduct surrounding the offense and during the trial was eccentric, sometimes bizarre. In at least one circumstance, his trial conduct undermined his defense. At one point, as Yeager's counsel raised a foundational objection to the admission of a letter that Yeager allegedly wrote to Thomure, Yeager volunteered that he had written the letter. Other aspects of his behavior suggest that he persisted in harboring delusions regarding his relationship with Ms. Johnson.

Regardless, we find that the record does not yield reasonable grounds to doubt that Yeager was competent to proceed with

---

4. Indeed, even the statement by Yeager's trial counsel did not directly suggest that Yeager was no longer competent. Trial counsel did not indicate that he believed that Yeager no longer understood the proceedings or that Yeager was no longer able to assist his trial counsel in his defense.

trial. Indeed, review of the record reveals that Yeager was lucid during the trial proceedings and understood what was occurring during those proceedings. He testified clearly about the events in question. He knew his actions exposed him to criminal liability. Yeager's motivation (to prove his love to Ms. Johnson) and his goal (to save her honor), while perhaps bizarre in some people's view, do not demonstrate a lack of competency under Chapter 352. Yeager's behavior did not indicate that he lacked "the present ability to consult with his lawyer with rationality and to understand the proceedings against him." *Messenheimer,* 817 S.W.2d at 278.

In passing, we note that while the presentence investigation report is discussed in Yeager's statement of facts, he does not raise any argument that the report has bearing upon the issues at bar.[5] Given that our inquiry is directed at whether there was a reasonable basis, either prior to trial or during trial, to doubt Yeager's competency, the pre-sentencing report is of minimal, if any, relevance to the issues present here. However, the observations made by the investigator in the pre-sentencing investigation report appear to be consistent with the findings made in the August 2001 mental examination that Yeager was competent.

With no additional evidence tendered by Yeager and no evidence based on the court's personal observations of Yeager at trial that would provide a reasonable basis to doubt Yeager's competency to stand trial, the trial court had no duty to *sua sponte* order a second mental evaluation. *Guinan,* 726 S.W.2d at 757. Yeager's second point on appeal is denied.

Having concluded that reasonable cause did not exist for the trial court to sustain Yeager's oral motion for a second mental

examination or in failing to order that examination *sua sponte* during trial, the judgment and sentence below is hereby affirmed.

ROBERT G. ULRICH, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.

---

**5.** A criminal defendant also may not be sentenced at a time when he is not competent as defined in Chapter 552. *Woods,* 994 S.W.2d at 36.