

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| AARON HECKER,<br>Appellant, | ) |
| | )    **WD84950** |
| v. | ) |
| | )    **OPINION FILED:** |
| | )    **MARCH 21, 2023** |
| STATE OF MISSOURI,<br>Respondent. | ) |
| | ) |

**Appeal from the Circuit Court of Livingston County, Missouri**
**The Honorable Daren Lee Adkins, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge, W. Douglas Thomson, Judge,**
**Janet Sutton, Judge**

Aaron Hecker appeals the judgment of the Livingston County Circuit Court

denying his Rule 24.035 motion after an evidentiary hearing. He claims in two points on

appeal he received ineffective assistance of counsel because his counsel failed to

investigate his mental health to determine if he was competent to be plead guilty and be

sentenced. The judgment is vacated, and the matter is remanded.

## Facts

Aaron Hecker was charged as a prior and persistent offender with two counts of

Assault in the Second Degree—Special Victim, section 565.052[1], one count of Resisting

---

[1] All statutory citations are to RSMo 2016 as updated through the most recent
cumulative supplement unless otherwise indicated.

Arrest, section 575.150, one count of Unlawful Possession of a Firearm, section 571.070, and one count of Armed Criminal Action, section 571.015. Hecker was alleged to have attempted to cause physical injury to two law enforcement officers by using a deadly weapon, a firearm he was prohibited from possessing as a result of prior felony convictions.

Hecker retained counsel ("Plea Counsel"), who entered his appearance on January 8, 2018. On December 4, 2018, Plea Counsel filed a motion to withdraw as counsel, stating that Hecker discharged Plea Counsel as his attorney. Plea Counsel filed a notice stating Hecker was eligible for Office of State Public Defender ("MSPD") services because Hecker's parents provided the funds for Plea Counsel's services, and Hecker did not have access to those funds. The MSPD declined to represent Hecker, reasoning that Hecker's previous retention of private counsel showed that he was not indigent. The court permitted MSPD to withdraw, and Hecker proceeded pro se.

On March 18, 2019, Plea Counsel entered a limited entry of appearance on behalf of Hecker. The limited entry stated Plea Counsel would only represent Hecker in guilty plea and sentencing proceedings, that Plea Counsel would refuse to represent Hecker if he elected to proceed to trial, and that Hecker agreed to the limited scope of that representation. The guilty plea hearing was held that same day. As part of the plea agreement, the State dismissed all counts except for one count of Assault in the Second Degree—Special Victim, and one count of Resisting Arrest.

During the plea hearing, the following exchange occurred regarding Hecker's use of drugs prior to pleading guilty. Hecker had taken Vistaril, Haldol and Cogentin. He'd been taking them for around two months. The only side effects he had noticed were drowsiness and being "a little bit slower than usual." He had taken the prescribed amount in the 48 hours prior to the guilty plea. Hecker had never had blackouts or not recalled what had happened. He had never taken those medications and later thought he exercised poor judgment while on them. Hecker answered that nothing about his physical or mental health made it difficult for him to stand there, understand the judge's questions, and answer the judge's questions. Other than the three prescription medications, Hecker stated he was not under the influence of any intoxicants or drugs.

After questioning Hecker regarding the voluntariness of his plea, Plea Counsel made the following statement to the court:

> Judge, the original plea offer in this case, which is identical to the plea offer that we've described to the Court in this afternoon's hearing, was first presented to [Hecker] months ago, and by months, more than three months ago, and was explained at that point in time to [Hecker]. Subsequent to that meeting and those discussions, there was a point in time where Mr. Hecker had relieved me as his counsel of record. I was subsequently contacted by a family member to reinstitute plea negotiations and to get the original plea offer back on the table, and that is the plea offer that Mr. Hecker is pleading to today. And he and I have met within the last three weeks on a number of occasions to discuss getting the plea offer back on the table. It was formally placed back on the table not last Friday but the—I'm sorry—not last Thursday but the Thursday before. And Mr. Hecker and I have met multiple times since then to again discuss the plea proposal.

After a break for Hecker to speak with Plea Counsel and other questioning, Hecker stated

he had no complaints regarding Plea Counsel.  The court established a factual basis.  In

so doing, Hecker stated:

> On August 18, 2017, in Livingston County, Missouri, I attempted to cause
> physical injury by taking a pistol away from the side of my head and
> shooting it at two police officers.  At the time I fired my pistol, I was inside
> my father's house.  I knew the two police officers had come to my father's
> house to attempt to arrest me.  The two officers had weapons pointed at me
> and I threatened to shoot myself with my pistol in an effort to prevent the
> officers from arresting me and to scare them away.

When questioned, Hecker admitted and knew that he had attempted to cause the police

officer serious physical injury and that the firearm discharged during the incident.  The

State indicated the facts it would prove if the matter went to trial:

> Your Honor, if this case would go to trial, it would be the State's evidence
> that on or about August 18, 2017, here in Livingston County, specifically at
> Aaron Hecker's family home where he grew up, where his father now
> resides, officers of the Chillicothe Police Department, specifically [two
> police officers], responded to that location in order to serve an arrest
> warrant out of the state of Kansas, and at that location they found Aaron
> Hecker in his childhood bedroom with a firearm and he did in fact attempt
> to cause physical injury to those officers by discharging that firearm at [the
> two police officers].

The court accepted Hecker's guilty plea.  Plea Counsel asked for a Sentencing

Assessment Report.  The case was continued for a sentencing hearing.

On April 9, 2019, after Hecker's guilty plea, Plea Counsel filed a letter with the

court.  The letter informed the Missouri Department of Probation and Parole ("Probation

and Parole") that Hecker "has a long history of mental health issues and prior to August

2017 he had been objectively diagnosed with a psychotic disorder."  Plea Counsel stated

4

that "[b]ecause of Mr. Hecker's diagnosis and mental health issues, I have instructed Mr. Hecker to not participate in any Sentencing Assessment Report interview. Some would say it would be something close to malpractice for any experienced lawyer to allow his client to be interviewed while suffering from this type of condition." Probation and Parole respected Plea Counsel's letter and declined to interview Hecker as a part of preparing the Sentencing Assessment Report.

The sentencing hearing was held on July 15, 2019. A victim impact statement of one of the law enforcement officers at whom Hecker shot a gun was read. The State introduced a video depicting the offenses to which Hecker admitted. The State asked the plea court to sentence Hecker to fifteen years in prison for Assault in the Second Degree and four years in prison for Resisting Arrest, with those sentences to be served consecutively.

Plea Counsel argued that Hecker suffered from schizophrenia, with a diagnosis predating the allegations in the criminal cause. Plea Counsel read Hecker's suicide note that he left for his family immediately prior to the events subject to the guilty plea. Plea Counsel described the events surrounding the charges against Hecker as follows: Hecker pointed a gun at his head; Hecker fired a shot in the direction of police officers; then, Hecker stood unmoving and unshielded while officers shot at him fourteen times. Plea Counsel stated that Hecker "has a very serious mental illness, schizophrenia."

The State indicated that it had not seen medical records or evidence of a mental diagnosis until the week of the sentencing hearing, but it did not object to admission of that evidence. The following then occurred:

> PLEA COUNSEL: Judge, when we -- when we -- when we met with the Court last for what was then a scheduled sentencing hearing, one of the things that I had learned shortly before that hearing was that Mr. Hecker, following his arrest on August 18 -- everybody knows, and it was in discovery -- that he was taken to the Hedrick Medical Center and he was evaluated. And a portion of those records from Hedrick included what appeared to me to be a mental evaluation, psychiatric evaluation and mental health evaluation. I presumed that was in the context of a possible psychiatric or mental healthcare hold. Shortly before this hearing was originally scheduled to take place, it was brought to my attention that, no, there was actually a second mental evaluation that was performed. Mr. Hecker was transported from Chillicothe over to the Mosaic Life Care Center at St. Joseph and underwent a psychiatric evaluation by the folks at St. Joseph. That was the additional whether we call it discovery or new information that had been brought to the attention of me shortly before we were scheduled to originally hold the sentencing hearing. I obtained from Mosaic a copy of their chart following the last hearing and I provided to the Defendant by way of the Sentencing Memorandum Supplement and the exhibits filed with the Court in conjunction with the supplement materials or records from Mosaic regarding the evaluation that they performed on Mr. Hecker on August 19, 2017. Within the Mosaic records, consistent with what we have presented thus far, the defense has presented thus far, the staff at Mosaic again found that Mr. Hecker suffers from a severe mental illness, that his judgment and his insight is severely impaired, that he is a suicide risk. And within the records from Mosaic -- I believe it is Exhibit No. -- I believe it's Exhibit No. 102 – it's the first page -- the folks at Mosaic found that Mr. Hecker, when evaluated, denied homicidal thoughts, expresses as evidence of suicidal acts or thoughts. But the evaluation found that Mr. Hecker denied homicidal thoughts. And I think that's significant and it's important. And we provided those materials to the State in a timely fashion.
>
> THE COURT: Well, for what purpose, I mean, other than -- is what you're suggesting is that he was not competent at the time of the occurrence now, is that what you're --

PLEA COUNSEL: No, Judge, that's – that's not it.  There has not been – the defense to date has not suggested that Mr. Hecker was not guilty by reason of mental defect, has not suggested that.  The Defendant, likewise, has not asserted in this action that Mr. Hecker is not competent to stand trial.  We've not asserted that.  What we suggest to Your Court in mitigation during sentencing, when this Court determines moral culpability and sentencing culpability, in mitigation one of the things Your Honor should look at is compared to a young man maybe 34 years of age with no mental illness, but a real crappy attitude and a complete disrespect for law enforcement, 19 years for something like this is probably appropriate.  But for a fellow Mr. Hecker's age, with overwhelming objective evidence of suffering from schizophrenia, overwhelming objective evidence that Mr. Hecker, on August 18, 2017, fired that one shot at those officers in an act of suicide, in sentencing mitigation, in determining moral culpability, Exhibits 101 through 108 are relevant for mitigating factors and mitigating evidence.

Plea Counsel stated that, just before the events involved in the offenses, Hecker's family was exploring having Hecker appointed a guardian due to his mental illness.

After sentencing evidence and argument, the court asked Hecker if he would like to make a statement.  The following occurred:

THE COURT: Mr. Hecker, do you have anything you'd like to say today?

PLEA COUNSEL: Mr. Hecker does not, Your Honor.  Because of his mental health disease, on my recommendation, Mr. Hecker will not make a statement.

THE DEFENDANT: I do have something to say.

PLEA COUNSEL: Mr. Hecker.  Your Honor, this is -- I believe the Rules of Ethics provided that this decision as to whether Mr. Hecker makes a statement during sentencing rests with counsel and not with the Defendant.  I accept full responsibility and it's my decision, not Mr. Hecker's.  He suffers from schizophrenia and he will make outlandish statements if under stress.

THE COURT: I'm waiting --

PLEA COUNSEL: I hope -- I hope Your Honor understands.

THE COURT: We've discussed these facts before during the plea hearing and we didn't seem to have any trouble at that time.

PLEA COUNSEL: Is he competent? He's competent. He's competent. That's not the argument. I do not want the Court to take a negative or make a negative inference against Mr. Hecker based on my advice to him and my recommendations to you. That is all.

The court sentenced Hecker to serve fifteen years in prison and four years in prison, consecutive to one another. The court advised Hecker of his rights under Rule 24.035 and asked if Hecker was satisfied with Plea Counsel. Hecker replied that he was satisfied. The court then found no probable cause to believe Plea Counsel was ineffective and committed Hecker to the custody of the Missouri Department of Corrections.

On December 30, 2019, Hecker filed his pro se motion for postconviction relief under Rule 24.035. Counsel was appointed on January 6, 2020. An amended Rule 24.035 motion was filed in a timely manner. Hecker alleged four claims for relief: (i) Plea Counsel failed to investigate Hecker's competence to plead guilty or be sentenced; (ii) Plea Counsel failed to investigate mental-health based defenses to the charged offenses; (iii) Plea Counsel failed to inform Hecker of the availability of mental-health based defenses; and (iv) Plea Counsel had a conflict of interest when Hecker pled guilty because Plea Counsel had a divided duty of loyalty between Hecker and Hecker's parents.

Hecker, Plea Counsel, and a doctor testified at the evidentiary hearing on the Rule 24.035 motion.  Relevant to this appeal, Plea Counsel testified:

Q. At any point during this representation, did you ask the Court to evaluate him for his competence to proceed, to have him evaluated for his competence to proceed?

A. I think in neither of my representations did we do that.

Q. Did you have him evaluated by a psychologist or psychiatrist?

A. I did not.

Q. At some point, did you become aware that he had been found incompetent in the State of Kansas?

A. I -- I reviewed and obtained records from that Johnson County criminal action, which included a number of findings regarding his competency.

Q. Did those findings include that he was incompetent but then restored to competence in the State of Kansas?

A. For lack of a better description, yes.  That's accurate.

Q. Did you obtain those records before or after the guilty plea?

A. There were two different sets in Kansas.  He was evaluated on two different occasions in Kansas.  The second finding, the most recent finding on that issue, I believe that was after, if not the guilty plea, it might have even been after sentencing, and --
…
Q. Is it fair to say that you, as part of your sentencing argument, that you introduced some of those records in support of his mental health, and in -- I'm sorry.

A. Yes.

Q. That you introduced some of those records at sentencing for the purposes of mitigation?

9

A. I -- I introduced or attempted to introduce a number of -- whether they're medical records or mental health records during the sentencing hearing. I'm sorry. I don't remember specifically which records they were, but I know there were a number.

Q. Did you retain any mental health expert to -- for the purposes of evaluating Mr. Hecker for any kind of mental health based defense?

A. I consulted with a mental healthcare professional in Lawrence, Kansas, and I do not remember her name. Did I retain her? No, I did not. Had she performed an evaluation on Mr. Hecker? She was initially retained to do that, but had not performed one and did not perform one.

On cross examination, Plea Counsel testified:

Q. Can you recall being worried Mr. Hecker was not receiving medication?

A. Without looking at my file, I can't remember. Let me -- Let me answer your question -- answer your question. Before I got very far into the file, one of the things I looked into was made sure I had in my file the Missouri statutes that dealt with the issue of mental competency as well as NGRI. And when I met with Mr. Hecker in the jail, I had that issue in my mind and always observed, assessed for whether or not it appeared to be Mr. Hecker understood the conversations that we were having, understood the charges that were pending against him and whether or not I believed he was capable of participating in his own defense.

Plea Counsel believed that Hecker understood their conversations and was capable of participating in his own defense. Plea Counsel did not believe that a defense of not guilty by reason of insanity would be viable because at least part of Hecker's condition was caused by Hecker using methamphetamine. He testified:

Q. At any point during those conversations, did you believe that Mr. Hecker did not understand the nature of what he was asking you to do?

A. I -- I never -- I never developed that impression, and I looked, and I listened, and I never developed that impression.

10

Q. On the date of the actual plea when Mr. Hecker was in court with you, did he have the same kind of affect that you had talked about prior?

A. He was nervous. He was nervous at the guilty plea hearing, and he was nervous at the sentencing hearing. That was clear to me. Did he appear to understand the nature of the proceeding of what we were going to do and what the consequences would be if the judge would accept his guilty plea? It appeared to me he did.

The doctor testified that Hecker had paranoid schizophrenia. The doctor concluded Hecker was not competent to proceed when he pled guilty or when he was sentenced. The doctor opined that Hecker could understand the role of the court system and the consequences of pleading guilty but that Hecker lacked the ability to *rationally* understand the proceedings. The doctor believed that Hecker's inability to rationally understand the proceedings was a direct result of his mental disease. The doctor further believed that Hecker continued to be delusional, including at the time of the hearing on the Rule 24.035 amended motion.

The hearing court denied Hecker's Rule 24.035 motion. It made the following relevant findings: (i) the court found Plea Counsel credible and gave his testimony "strong weight"; (ii) at the guilty plea hearing, Hecker "repeatedly indicated that his mind was clear and that he understood the guilty plea proceeding; and that he was pleading guilty in exchange for the recommendation and dismissals which were promised, but the Court had ultimate sentencing discretion under the full range of punishments"; (iii) "[a]t sentencing the Court inquired of [Mr. Hecker's] attorney, [Plea Counsel], specifically about the competence of the defendant at the time of sentencing" (iv) the court found the

11

doctor to be credible; (v) but the court gave "greater weight to the evidence of the trial transcript and plea counsel which were actual observations of [Hecker] during the relevant periods of the plea and sentencing[,]" noting that the court did not believe Hecker acted "erratic or confused during either the plea hearing or at sentencing[.]" The court also found Hecker's testimony at the evidentiary hearing to not be credible.

The court ruled that Hecker was required to "show counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and [Hecker] was thereby prejudiced." The court also ruled that Hecker was required to "show that counsel's errors were so serious that his representation fell below an objective standard of reasonableness, and that these errors affected the outcome of the plea process." The court concluded that Hecker "understood the nature of the charges, and freely, voluntarily, and knowingly entered his plea to the charge[,]" and that Hecker failed to show prejudice.

This appeal follows.

**Standard of Review**

"Appellate review of a motion court's denial of a 24.035 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." *Washington v. State*, 598 S.W.3d 656, 666 (Mo. App. E.D. 2020) (internal quotation marks omitted). "Findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id*. (internal quotation marks omitted). "We

12

presume the motion court's findings and conclusions are correct." *Id*. "[T]he proper legal standard to be applied in determining a post-conviction motion[]" is "an issue of law, which this Court determines *de novo*, without deference to the motion court." *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002).

**Ineffective Assistance of Counsel and Mental Competency**

"Due process requires that a person who wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily." *Washington*, 598 S.W.3d at 667 (internal quotation marks omitted). "A person shall not be tried, convicted, or sentenced for the commission of an offense if, because of mental disease or defect, that person lacks the capacity to understand the proceedings related to the offense or assist counsel in defense of the charged crimes, if the incapacity endures." *Id*. "A competent defendant must have a sufficient, present ability to consult with counsel and must understand the proceedings, rationally and factually." *Id*. "The standard for determining a defendant's competence to plead guilty is essentially the same as that for determining if a defendant is competent to proceed to trial." *Id*. (internal quotation marks omitted). "A defendant is presumed competent and bears the burden of showing a lack of competence." *Id*.

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong *Strickland* test." *Id*. "First, the movant must show counsel failed to exercise the level of skill and diligence a reasonably competent counsel would have exercised in a similar situation." *Id*. "Counsel's conduct is presumed to be

13

reasonable and effective under the first prong." *Id*. "Second, the movant must show trial counsel's failure prejudiced the defendant." *Id*. "A movant must show both prongs by a preponderance of the evidence." *Id*.

"To satisfy the first *Strickland* prong when a movant claims counsel should not have allowed the movant to enter a guilty plea without investigating the movant's mental condition, the movant must show a factual basis indicating a questionable mental condition that should have caused [the] attorney to initiate an independent investigation of [the movant's] mental state." *Id*. at 667-68 (internal quotation marks omitted). "To satisfy the second *Strickland* prong when a movant claims counsel should not have allowed the movant to enter a guilty plea without investigating the movant's mental condition, the movant must show a reasonable probability [the movant] was not competent at the time in question." *Id*. at 668. "A competent defendant must have a sufficient, present ability to consult with counsel and must understand the proceedings, both rationally and factually." *Id*.

"Normally to satisfy the prejudice prong in the context of a guilty plea, a movant must show a reasonable probability that, but for counsel's unprofessional errors, [he] would not have pleaded guilty and would instead have insisted upon going to trial." *Hubbard v. State*, 31 S.W.3d 25, 38 (Mo. App. W.D. 2000) (internal quotation marks omitted). "Thus, generally once a plea of guilty has been entered, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea." *Id*. (internal quotation marks omitted). "However, a movant's claim that his or her counsel

14

was ineffective for failing to properly investigate his or her mental health status and present such information to the court does not lend itself very well to the outcome test in *Strickland.*" *Id*. (internal quotation marks omitted). "Since to allow an incompetent person to plead guilty is a *per se* due process violation, whether an incompetent person would still have pled guilty despite his or her counsel's ineffective assistance is irrelevant." *Id*. "Instead, in such a situation, [w]ith respect to the prejudice prong of a claim of ineffective assistance of counsel, [the movant] need only demonstrate a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome." *Id*. (internal quotation marks omitted). "This is a lower burden of proof than the preponderance standard." *Id*. (internal quotation marks omitted).

"In the absence of some suggestion of mental instability, there is no duty on counsel to initiate an investigation of the mental condition of an accused." *Henderson v. State*, 977 S.W.2d 508, 511 (Mo. App. S.D. 1998). "The need for an investigation is not indicated where the accused has the present ability to consult rationally with counsel and to understand the proceedings." *Id*. "We view the reasonableness of counsel's conduct from counsel's perspective at the time and eliminate hindsight from consideration." *Id*.

"The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial." *Id*. An accused may have a mental illness "and still be competent to stand trial or enter a knowing, intelligent plea of guilty." *Id*. "Rather, the test must be whether [a movant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id*. (internal quotation marks omitted).

In *Woods v. State*, 994 S.W.2d 32, 34 (Mo. App. W.D. 1999), the defendant pled guilty to murder in the second degree and armed criminal action. He attempted to commit suicide before his first sentencing date. *Id*. One of the issues before this court was "[s]hould counsel have requested, or the court ordered, a mental exam on Woods considering the attempt he made on his life on the first scheduled sentencing hearing date, the subsequent three-day stay in a mental health facility, coupled with his extensive history of serious mental health problems, including some fifteen months in a mental health facility ordered in this very same case?" *Id*. at 38. The court cited four factors that, when considered together, imply possible mental incompetency: "(1) prior commitments to mental institutions for evaluations; (2) inappropriate behavior and responses on the witness stand; (3) the bizarre circumstances of the criminal activity …; (4) the nature of the prior offenses causing the earlier examinations." *Id*. The lack of one factor "does not require a holding that the accused was competent to proceed." *Id*. Wood's defense counsel testified at the post-conviction evidentiary hearing that, following the suicide attempt, "she felt Woods understood what was happening and ... was okay now." *Id*. at 39 (internal quotation marks omitted). This court concluded, however, that "[t]his was not counsel's call." *Id*. Instead, "[a]bundant prior evidence of mental incompetency, the time spent in the custody of Missouri's Department of Mental Health, the suicide attempt, and the trial judge's having sent him to a local mental health

16

facility, raised reasonable cause for counsel to have filed for a mental exam prior to sentencing." *Id*.

In the current case, the motion court found the doctor who testified to be credible. The doctor believed Hecker understood "the charges and the consequences if he pleads guilty, [as well as] the roles of the defense attorney, prosecuting attorney, and the role of the judge and the role of the jury." But, the doctor determined that Hecker did not rationally understand the proceedings, and that Hecker's lack of rational understanding was based on his ongoing delusions. The doctor's opinions were based on records from before Hecker was charged with the underlying offenses in Missouri and on the doctor's observations of Hecker in prison. They were also based on a scientific understanding of Hecker's illness.

While it found the doctor's testimony credible, the motion court found the testimony of Plea Counsel as well as the court's own observations of Hecker during the guilty plea and sentencing to be more persuasive.

## Point I

In his first point on appeal, Hecker claims he received ineffective assistance of counsel at sentencing. He states that Plea Counsel failed to investigate his mental health to determine if Hecker was competent to be sentenced. Hecker argues he was prejudiced because there is a reasonable probability that he was incompetent to be sentenced.

At the time of sentencing, Plea Counsel knew the following: Hecker had been suicidal and was hospitalized under a psychiatric hold after his arrest. Hecker was

17

diagnosed with schizophrenia.  Hecker had been found incompetent in a Kansas case and had to be restored to competence.  Hecker's parents had sought guardianship options for Hecker because of his mental health.  Plea Counsel was worried about Hecker's mental state to such an extent that he prevented Hecker from being interviewed for the Sentencing Assessment Report and prevented Hecker from speaking during sentencing.  We find that this is a factual basis indicating a questionable mental condition that should have caused Plea Counsel to initiate an independent investigation of Hecker's mental state. *Washington*, 598 S.W.3d at 667-98.

Plea Counsel felt that Hecker was competent during sentencing.  The court observed Hecker during sentencing and did not observe anything causing it to question Hecker's competency.  In its judgment, the motion court found these things dispositive. "While a defendant's demeanor may not be dispositive of his or her competency to stand trial … the court is certainly free to consider demeanor when determining competency and give it the weight it determines is warranted" *Hubbard*, 31 S.W.3d at 36.  Under the facts of this case which includes Hecker's history and the doctor's credible testimony, however, we find that Hecker demonstrated "a *reasonable probability* that he was incompetent, sufficient to undermine confidence in the outcome." *Id*. at 28 (internal quotation marks omitted) (emphasis added).

Accordingly, Hecker met his burden to show ineffective assistance of counsel and prejudice with respect to sentencing.  The point is granted.

**Point II**

18

In his second point on appeal, Hecker claims he received ineffective assistance of counsel at his guilty plea. He states that Plea Counsel failed to investigate his mental health to determine if Hecker was competent to plead guilty. Hecker argues he was prejudiced because there is a reasonable probability that he was incompetent to plead guilty.

At the time of Hecker's guilty plea, Plea Counsel knew the following: Hecker had been suicidal. Hecker was diagnosed with schizophrenia. Hecker's parents had sought guardianship options for Hecker because of his mental health.

It does not appear that Plea Counsel learned that Hecker had been found incompetent in a prior Kansas case until after the guilty plea. Plea Counsel's letter preventing Hecker from being interviewed for the Sentencing Assessment Report occurred after the guilty plea. Plea Counsel did not prevent Hecker from speaking during the guilty plea as he did during sentencing.

During the evidentiary hearing, Plea Counsel testified that before he "got very far into the file," one of the things he looked into was he made sure he had in his file the Missouri statutes that dealt with the issue of mental competency as well as not guilty by reason of insanity. Further, when Plea Counsel met with Hecker in jail, he had the issue of competency in his mind and "always observed, assessed for whether or not it appeared to be Mr. Hecker understood the conversations that we were having, understood the charges that were pending against him and whether or not I believed he was capable of participating in his own defense." Plea Counsel did not believe that a defense of not

19

guilty by reason of insanity would be viable because at least part of Hecker's condition was caused by Hecker using methamphetamine.

Plea Counsel was aware that Hecker's competency could be an issue prior to the guilty plea. We find that this is a factual basis indicating a questionable mental condition that should have caused Plea Counsel to initiate an independent investigation of Hecker's mental state. *Washington*, 598 S.W.3d at 667-98.

Plea Counsel felt that Hecker was competent during the guilty plea. The court observed Hecker during the guilty plea and did not observe anything causing it to question Hecker's competency. In its judgment, the motion court found these things dispositive. "While a defendant's demeanor may not be dispositive of his or her competency to stand trial … the court is certainly free to consider demeanor when determining competency and give it the weight it determines is warranted" *Hubbard*, 31 S.W.3d at 36. Under the facts of this case which includes Hecker's history and the doctor's credible testimony, however, we find that Hecker demonstrated "a *reasonable probability* that he was incompetent, sufficient to undermine confidence in the outcome." *Id*. at 28 (internal quotation marks omitted) (emphasis added).

Accordingly, Hecker met his burden to show ineffective assistance of counsel and prejudice with respect to his guilty plea. The point is granted.

## Conclusion

The motion court's findings with respect to Plea Counsel's failure to investigate Hecker's competency were clearly erroneous. The judgment of the motion court is vacated. The

matter is remanded with instructions to withdraw Hecker's guilty plea. Hecker's competence shall be evaluated before any other actions are taken in his criminal case.

                                           Anthony Rex Gabbert, Judge

All concur.